Michael O. LONGLEY, Plaintiff
and Appellant,

v.

LEUCADIA FINANCIAL CORPORA-
TION; Terracor, Inc.; City of St.
George; and Robert L. Morgan, State
Engineer, Defendants and Appellees.

No. 970152–CA.

Court of Appeals of Utah.

July 2, 1998.

J. Craig Smith, David B. Hartvigsen, An-
nette F. Sorensen, Scott M. Ellsworth, and
Daniel J. McDonald, Salt Lake City, for
Longley.

Richard C. Skeen, Bryon J. Benevento,
and Thomas W. Clawson, Salt Lake City, for
Leucadia Financial Corporation.

Gary G. Kuhlmann and Jonathan L.
Wright, St. George, for City of St. George.

Jan Graham, Michael M. Quealy, and John
H. Mabey, Jr., Salt Lake City, for Robert L.
Morgan, State Engineer.

Before DAVIS, P.J., and BENCH and
JACKSON, JJ.

## OPINION

BENCH, Judge:

Plaintiff Michael Longley appeals a trial
court's order granting summary judgment to

Leucadia Financial Corporation (Leucadia), the City of St. George, and Robert L. Morgan as state engineer for the State of Utah. The trial court ruled that Longley lacked standing to seek judicial review of the state engineer's decision approving Leucadia's extension request regarding water rights. We affirm.

## FACTS

In 1970, Leucadia filed an application with the state engineer to change the point of diversion of water rights it owned in the Atkinville area south of the Virgin River. The state engineer approved the application and gave Leucadia until November 1973 to implement the change. Leucadia thereafter applied for and obtained four extensions of time.[1] In granting Leucadia's fourth extension, the state engineer indicated that Leucadia had until November 1989 to implement the change and that no further extensions would be granted. In 1989, Longley sought to intervene in the matter and asked the state engineer for actual notice of any further action. The state engineer responded by advising Longley of the terms of Leucadia's last extension.

Leucadia filed proof of a permanent change with the state engineer, claiming it had constructed six wells. The state engineer inspected the facilities and found no new wells. In September 1990, Leucadia withdrew its proof of permanent change and asked the state engineer to consider a reinstatement and extension of time. In July 1992, the state engineer issued a memorandum decision rejecting reinstatement.

On July 30, 1992, Leucadia filed a request for reconsideration. The state engineer sent Leucadia a letter acknowledging receipt of the request and explained that "[i]f no action is taken within 20 days of the date the request was received in our office, the request is considered denied." On August 20, 1992,

the state engineer granted reconsideration and later issued an amended memorandum decision reinstating the application. The state engineer then published notice of the extension request and allowed for protests to be filed until May 14, 1994.

In 1995, Longley filed a protest and requested notice of any further action. The state engineer later granted Leucadia's fifth extension request and gave Leucadia until November 1996 to implement the change in the point of diversion.[2] Upon receiving various requests for reconsideration after the May 1994 deadline, including Longley's, the state engineer ruled that the requests were not from "aggrieved parties" who were entitled to be heard because they did not file timely protests in the administrative proceedings.

Longley initiated this action in district court, seeking judicial review of the state engineer's decision. After a hearing, the trial court granted summary judgment in favor of Leucadia and concluded that Longley lacked standing "because he did not file a timely protest, and, therefore, failed to exhaust his administrative remedies required by Utah Code Ann. § 63–46b–14 (1993)." Following entry of the court's order, Longley filed this appeal in the supreme court, which then transferred the appeal to this court pursuant to Rule 42 of the Utah Rules of Appellate Procedure.

## ISSUES

Longley argues that the state engineer failed to give him actual notice of the fifth extension request, in violation of his constitutional right to due process. Longley also argues that because the published notice did not comply with statutory requirements, the extension application is void.

---

1. Utah Code Ann. § 73–3–12(1)(b) (1989) provided: "Extensions of time, not exceeding 50 years from the date of approval of the application, may be granted by the state engineer on proper showing of diligence or reasonable cause for delay." We refer to the statutes in effect in 1989 and note that they have since been amended. *See, e.g.,* Utah Code Ann. § 73–3–12 (Supp.1997).

2. The City of St. George was in the process of purchasing Leucadia's water rights. The state engineer granted the extension of time on condition that Leucadia convey the water rights to the City of St. George before the November deadline.

## ANALYSIS

### I. Due Process Claim

█ Section 73–3–12(1)(d) of the Utah Code provided that water right change application "extensions beyond 14 years shall be granted only after application and publication of notice." Utah Code Ann. § 73–3–12(1)(d) (1989). Section 73–3–12(1) further provided as follows:

(e)(i) The state engineer shall publish notice once a week for three successive weeks in a newspaper of general circulation in the county in which the source of supply is located.

(ii) The notice shall contain information that will inform the public of the diligence claimed and the reason for the request.

(f) Any person interested may, at any time within (30) days after the notice is published, file a protest with the state engineer.

Although the state engineer published a notice, Longley claims that he was entitled to actual notice of the extension request. Consequently, Longley argues the state engineer's failure to give him actual notice of the extension request violated his constitutional rights to due process. We disagree.

This issue is controlled by *Whitmore v. Murray City,* 107 Utah 445, 154 P.2d 748 (1944). In *Whitmore,* the state engineer granted Murray City's application to change its point of diversion. *See id.* at 447–48, 154 P.2d at 750. The state engineer published notice of the proposed change in the point of diversion as required by statute. *See id.* Four years later, Whitmore complained that the state engineer's action deprived him of due process of law because the state engineer did not personally serve him with notice of Murray City's application. *See id.* at 449, 154 P.2d at 750. The supreme court observed that the "office of state engineer was not created to adjudicate vested rights between parties, but to administer and supervise the appropriation of waters of the state.... [I]n fulfilling his duties he acts in an administrative capacity only and has no authority to determine rights of parties." *Id.* (citing *Eardley v. Terry,* 94 Utah 367, 373–74, 77 P.2d 362, 365 (1938)). As a result, the supreme court held that "[s]ince any action

by the state engineer under this section cannot affect any vested right, it follows the [trial] court did not err in finding that notice by publication as provided therein, does not violate the due process clause of our constitution." *Id.*

Longley argues that the supreme court "subsequently undermined its holding in *Whitmore* by recognizing that while the [s]tate [e]ngineer does not adjudicate water rights, his decisions often have the practical consequence of affecting valuable rights." In *United States v. District Court,* 121 Utah 1, 238 P.2d 1132 (1951), the Utah Supreme Court recognized that the state engineer's "decisions[ ] often have the effect of determining valuable rights." *Id.* at 6, 238 P.2d at 1134. A close reading of the case, however, shows that "no rights to the use of water accrue by the mere approving or rejecting of an application, the only thing thereby determined is whether the application may proceed in accordance with the statute to perfect the right applied for." *Id.* at 9, 238 P.2d at 1136. The supreme court further concluded that

the Engineer rejects applications only when it is clear that the applicant can establish no valuable rights thereunder, he does not adjudicate claims but decides only that there is probable cause to believe that applicant may be able to establish rights under his application without impairing the rights of others. Such a decision is administrative in nature and purpose and the decision of the court on review, except for formalities of the trial and judgment is of the same nature and for the same purpose.

*Id.* at 11–12, 238 P.2d at 1137.

More recently, the supreme court noted that a section 73–3–7 application protest

does not create in any "interested" person a vested right to protest and subsequent entitlement to appeal. Rather it simply allows those persons who have a genuine concern about proposed changes in water rights to voice those concerns before the State Engineer and, as an important corollary, provides the State Engineer with all viewpoints relevant to any proposal.

*Badger v. Brooklyn Canal Co.*, 922 P.2d 745, 750 n. 9 (Utah 1996).

If a section 73–3–7 change application protest does not create any vested rights, *see id.*, certainly a section 73–3–12(f) extension protest cannot create any vested rights. Pursuant to a section 73–3–12 protest, the state engineer only considers whether the "applicant affirmatively shows that he has exercised or is exercising reasonable and due diligence in working toward completion of the appropriation." Utah Code Ann. § 73–3–12(g) (1989). Because Longley has no vested property interest affected by the extension request, he is not entitled to actual notice of the extension request.

## II. Statutory Claim

Longley next contends that the published notice of the extension request did not comply with statutory requirements and therefore the extension application is void. Section 73–3–12(e)(ii) provided: "The notice shall contain information that will inform the public of the diligence claimed and the reason for the request." In attacking the adequacy of the published notice, Longley argues that the notice did not inform the public of any diligence claimed. The published notice described the diligence claimed as follows: "Terracor (Leucadia Financial Corp.) proposes to change POD [points of diversion] of water as evidenced by [Water Rights] . . . [by] adding the following . . . wells." That statement, gleaned from various parts of the notice, does not inform the public of any diligence claimed. It merely describes proposed work. Therefore, the notice does not "contain information that will inform the public of the diligence claimed." Utah Code Ann. § 73–3–12(e)(ii) (1989).

Longley also argues that the notice does not state the reason for the request. The notice states only that Leucadia is requesting an extension because it needs more time. That statement does not explain Leucadia's reason for seeking more time. The published notice therefore does not adequately inform the public of either the diligence claimed or the reason for the extension request. Nonetheless, the deficiencies in the published notice do not have the effect of voiding Leucadia's extension application.

Longley argues that the extension notification process of section 73–3–12 is similar to the notification requirements of the Utah Neighborhood Development Act. *See* Utah Code Ann. §§ 17a–2–1201 to –1260 (1991). Longley therefore urges this court to apply the reasoning of *W. & G. Co. v. Redevelopment Agency*, 802 P.2d 755 (Utah Ct.App. 1990) to the present case. However, because the extension notification process does not affect Longley's property interest, the analysis of *W. & G.* is inapplicable.

In *W. & G.*, the neighborhood development statute required interested persons to file a claim within thirty days from the publication of an ordinance finding blight. *See id.* at 761 n. 4. The landowners involved in *W. & G.* filed their claim ten years after the statute of limitations had run. *See id.* at 761. On appeal, the landowners argued "they did not receive constitutionally adequate notice to make the [redevelopment agency]'s action against them valid." *Id.* This court held that "[i]f adequate notice and an opportunity to be heard are not given, the proceedings are void and those not properly notified are not bound by the proceedings because the giving of such notice is jurisdictional." *Id.* at 765. This court noted that "[b]ecause redevelopment is a serious action with the potential to harm individual property rights, the Utah Supreme Court has held that 'strict compliance with the enabling legislation is required to enact an ordinance setting up a redevelopment plan.'" *Id.* at 761 (quoting *Salt Lake County v. Murray City Redev.*, 598 P.2d 1339, 1344 (Utah 1979)). By comparison, an extension protest under section 73–3–12 does not grant the state engineer jurisdiction over water users' property rights. The state engineer considers only whether the "applicant affirmatively shows that he has exercised or is exercising reasonable and due diligence in working toward completion of the appropriation." Utah Code Ann. § 73–3–12(g) (1989). Because Longley's property interest is not affected, the deficiencies in the published notice do not render Leucadia's extension application void.

We have considered Longley's other arguments and conclude they are without merit. *See Duncan v. Howard,* 918 P.2d 888, 895 (Utah Ct.App.1996) (noting court may decline to address arguments without merit on appeal).

## CONCLUSION

The state engineer did not violate Longley's constitutional right to due process in not providing him with actual notice because a extension request does not affect Longley's property rights. *See Whitmore,* 107 Utah at 447–48, 154 P.2d at 750. Because Longley's property interest is not affected, the deficiencies in the published notice do not render Leucadia's extension application void. *See Badger,* 922 P.2d at 750 n. 9.

We therefore affirm the trial court's grant of summary judgment.

DAVIS, P.J., and JACKSON, J., concur.