2000 UT 69

**Michael O. LONGLEY, Plaintiff and Appellant,**

v.

**LEUCADIA FINANCIAL CORPORATION, dba and fka Terracor; the City of St. George, a municipal corporation; and Robert L. Morgan, State Engineer of the State of Utah, Defendants and Appellees.**

No. 981428.

Supreme Court of Utah.

Aug. 25, 2000.

J. Craig Smith, David B. Hartvigsen, Daniel J. McDonald, Scott M. Ellsworth, Salt Lake City, for plaintiff.

Jan Graham, Att'y Gen., Michael M. Quealy, John H. Mabey, Jr., Asst. Att'ys Gen., Thomas W. Clawson, Richard C. Skeen, Bryon J. Benevento, Salt Lake City, Gary G. Kuhlmann, Jonathan L. Wright, St. George, for defendants.

ON CERTIORARI TO THE UTAH
COURT OF APPEALS

DURHAM, Justice:

## SUMMARY

¶ 1 Michael Longley appears pursuant to the grant of his petition for a writ of certiorari, appealing a decision of the court of appeals affirming the district court's grant of summary judgment in favor of respondents, Leucadia Financial Corporation, the City of St. George, and Robert Morgan, State Engineer of Utah. Longley argues that the court of appeals erred in affirming the trial court's ruling that he lacked standing to challenge the State Engineer's grant of Leucadia's fifth request for extension of time on its change application regarding water rights in Washington County. We reverse and remand to the district court.

## BACKGROUND

¶ 2 In 1970, Leucadia filed a change application with the State Engineer to two water rights in the Atkinville area south of the Virgin River. The State Engineer granted the application and Leucadia was given until 1973 to effectuate the change. Subsequently, Leucadia applied for, and received, four extensions of time on its change application.[1] On December 30, 1985, fifteen years after the filing of the original change application, the State Engineer granted a fourth extension on the condition that proof of appropriation be submitted on or before November 30, 1989; further, the State Engineer stated that "this shall be the last request granted and ... [r]equests for further extension will be denied." Four years later, in November 1989, Longley, a developer in the area and a junior appropriator to the same water rights as Leucadia, contacted the State Engineer's office regarding Leucadia's application. At that time, Longley was advised that the last extension request's terms were in the State Engineer's 1985 Memorandum Decision. Longley also requested actual notice of any action on the change application.

¶ 3 On November 30, 1989, the last day possible for Leucadia to submit proof of appropriation, Leucadia filed proof of a permanent change with the State Engineer. The proof was not signed, as required by the form, either by a representative of Leucadia or by its proof engineer. It described work allegedly performed to actually begin utilizing the water, including digging six new wells and constructing 24,000 feet of pipeline, booster pumps, a pressure reduction box, and a meter station connecting to St. George City's Quail Creek culinary transmission line.

¶ 4 In July 1990, representatives of the State Engineer inspected the alleged changes and found that

> [t]he descriptions on the subject proof are not correct, nor do they accurately describe field conditions. There were no wells equipped, no totalizing meters, no pipeline, and no connection into the St. George–Quail Creek pipeline as stated in the proof. There is no evidence that the water had been placed to beneficial use.

State Eng'r Mem. Decision No. 81–670(a6393) (July 10, 1992).

¶ 5 In September 1990, ten months after the expiration of its "final" extension and two decades after its initial application, Leucadia requested that the proof of appropriation previously submitted be withdrawn and filed both a request for reinstatement of its change application and a fifth extension request. The signature on this request was not notarized.[2] In July 1992, the State Engineer issued a Memorandum Decision in which it stated that "the applicant and proof engineer have not complied with rules and regulations governing the filing of proofs of appropriation and permanent changes and that this documentation must be rejected." *Id.* Accordingly, the State Engineer rejected

---

1. The State Engineer may grant such extensions pursuant to Utah Code Ann. § 73-3-12(2)(b) (Supp.1999). While there have been amendments to this statute since the filing of this lawsuit, those amendments do not affect the outcome in this case and for ease of reference, this opinion cites to the most recent version.

2. The statute requires that "[a]ll requests for extension of time shall be made by affidavit and shall be filed in the office of the state engineer on or before the date fixed for filing proof of appropriation." Utah Code Ann. § 73-3-12(2)(d). The State Engineer has apparently construed this statute to require notarization.

Leucadia's proof of permanent change and found that the change application lapsed for "failure to comply with statutory requirements and place the water to beneficial use." *Id.*

¶ 6 On July 30, 1992, Leucadia filed a request for reconsideration. On August 3, 1992, the State Engineer sent Leucadia an acknowledgment of receipt of such request and stated that "[i]f no action is taken within 20 days of the date the request was received in our office, the request is considered denied." In fact, the request for reconsideration was granted twenty-one days after it had been filed.[3]

¶ 7 On January 31, 1994, the State Engineer took several important actions that brought about a substantive change vis-a-vis Leucadia and the junior appropriators, including Longley, to the water rights involved in this appeal. First, Leucadia's fifth extension request was returned to it because "[y]ou did not have your signature properly notarized." Leucadia was given ten days to return a properly notarized form.

¶ 8 Simultaneously, and before the form could be returned, the State Engineer issued an Amended Memorandum Decision stating that

> previous to the rejection [of the change application because of Leucadia's false claims in its proof of permanent change], on September 21, 1990, a request was received ... [from Leucadia] to withdraw the proof[s] of appropriation and ... permanent change. A request for extension of time ... was also received on September 21, 1990, in which the applicant states "[c]auses for delay are financial considerations due to lack of sufficient testing to determine the reliability of the water aquifer. Time is required to complete the testing and affirm its value for full development as intended...."

State Eng'r Amend. Mem. Decision No. 81-670(A36857) & (a6393) (Jan. 31, 1994). The State Engineer continued, "After reviewing the information before him, the State Engineer is of the opinion that rejecting the proof

and lapsing the applications for failure to comply with statutory requirements may have been inappropriate since the proof upon which the action was being taken had been requested to be withdrawn." *Id.* As a result, the State Engineer rescinded the July 10, 1992 Memorandum Decision, reinstated Leucadia's change application with a September 21, 1990 filing date, and ordered Leucadia's fifth extension request to be processed anew. *See id.*

¶ 9 On February 3, 1994, more than four years after the expiration of its fourth extension, Leucadia re-filed its fifth extension request with a completed affidavit. The State Engineer proceeded to publish notice of the fifth extension request, allowing for protests to be filed by May 14, 1994. Longley filed a protest in April 1995, almost one year after the initial closing date for protesting had passed but before the extension request was ruled on, requesting notice of any further action.

¶ 10 On June 19, 1995, Leucadia's fifth extension request was granted. The only reason cited was "the City of St. George has entered into a purchase agreement with Leucadia ... and has indicated that upon approval of the extension they will complete the transaction to purchase this water right." State Eng'r Mem. Decision No. 81-670(a6393) (June 19, 1995). The Memorandum Decision required the right to be conveyed to the city prior to November 30, 1996 for the extension to be granted. *See id.* Thus, the extension was granted subject to the occurrence of a future event.

¶ 11 A number of requests for reconsideration were timely filed with the State Engineer, including Longley's. On July 19, 1995, the State Engineer sent Longley and the others letters stating that they were not "aggrieved parties" because they had not been parties to the administrative proceedings and therefore were not entitled to request reconsideration of the June 19, 1995 decision.

---

**3.** The State Engineer is authorized to take action on a request for reconsideration within twenty days of the filing of such request. After that time

has elapsed, the request is considered denied. *See* Utah Code Ann. § 63-46b-13(3)(b) (1997).

¶ 12 Longley filed this action in district court seeking judicial review of the State Engineer's decision. Summary judgment was granted in defendants' favor on the ground that Longley lacked standing to appeal the approval of the fifth extension request because he did not protest the fifth extension request in a timely manner. The court of appeals affirmed the district court's grant of summary judgment.

### STANDARD OF REVIEW

■■■ ¶ 13 When exercising our certiorari jurisdiction, we review the decision of the court of appeals and not that of the trial court. *See Platts v. Parents Helping Parents,* 947 P.2d 658, 661 (Utah 1997). Inasmuch as the issues before this court are questions of law related to statutory construction, we review the court of appeals' ruling for correctness. *See id.*

### ANALYSIS

¶ 14 Longley argues that the trial court erred in granting summary judgment, and that the court of appeals erred in upholding the trial court's ruling, under the statutory scheme governing water rights in this state. We examine this argument under the relevant statutes.[4]

### I. REQUIREMENTS OF THE STATUTE

#### A. *Statutory Provisions*

¶ 15 Water rights in the State of Utah are of utmost public concern. "Water, in an arid state like Utah, is its life-blood, measured in currency represented by survival itself,— without ... justification for protracted extension." *Blake v. Lambert,* 590 P.2d 351, 352 (Utah 1979). This court has likened "a drop of water [to] a drop of gold." *Carbon Canal Co. v. Sanpete Water Users Ass'n,* 19 Utah 2d 6, 9, 425 P.2d 405, 407 (1967). The State Engineer, appointed by the Governor with the consent of the Senate, has broad powers to oversee water policy in the state. *See*

Utah Code Ann. § 73–2–1 (Supp.1999). Specifically, the State Engineer "shall have the power to ... secure the equitable apportionment and distribution of the water according to the respective rights of appropriators." *Id.* § 73–2–1(3)(b)(ii). While the statute entrusts the State Engineer with broad discretion to accomplish this mandate, the legislature has given interested parties a significant role to play in this process as well. *See id.* § 73–3–12(2)(e), (f), (g).

¶ 16 Of relevance with respect to the instant case, the law requires that "[t]he construction of the works and the application of water to beneficial use shall be *diligently prosecuted* to completion within the time fixed by the state engineer." *Id.* § 73–3–12(2)(a) (emphasis added). At the heart of this appeal is the right to protest an extension of time requested by one who has previously received the State Engineer's approval to put water to beneficial use, but who has failed to do so within fourteen years after the time approval was initially granted. The statute states:

> Extensions not exceeding ·14 years after the date of approval may be granted by the state engineer upon a sufficient showing by affidavit, but extensions beyond 14 years shall be granted only after application and publication of notice.
>
> . . . .
>
> The notice *shall inform the public of the diligence claimed and the reason for the request.*

*Id.* § 73–3–12(2)(e), (f)(ii) (emphasis added). Further, the statute allows "[a]ny person who owns a water right from the source of supply referred to in Subsection (f) or holds an application from that source of supply [to] file a protest with the state engineer [within the applicable time]." *Id.* § 73–3–12(2)(g).[5] To resolve this case, this court must decide what type of compliance is required to fulfill the terms of the notice section of the statute.

---

**4.** Inasmuch as we decide the instant appeal on the basis of statutory compliance, we do not reach the constitutional claims raised by Longley.

**5.** It is uncontested that, at the time of Longley's protest, he met this requirement.

### B. Adequacy of Notice and Timeliness of Protest

¶ 17 The court of appeals concluded that the published notice did not "adequately inform the public of either the diligence claimed or the reason for the extension request." *Longley v. Leucadia Fin. Corp.*, 960 P.2d 907, 910 (Utah Ct.App.1998). We agree. Specifically, the notice stated, in pertinent part:

### NOTICE TO WATER USERS

The following applications requesting an EXTENSION OF TIME WITHIN WHICH TO SUBMIT PROOF OF BENEFICIAL USE have been filed with the State Engineer. It is represented that additional time is needed to place the water to beneficial use in Washington County. Persons objecting to an application must file a Protest [sic] stating the reasons for the protest.

*Notice L2837*, The Daily Spectrum, Apr. 1, 7 & 14, 1994. The notice went on to describe the procedure to be followed to file a protest, and mentioned "Leucadia Financial Corp." in parentheses, as part of a lengthy technical description of the water involved. *Id.* The notice contained no mention of the diligence claimed or the reason for the delay, making it unreasonable in our view to require a protester to "stat[e] the reasons for the protest," and clearly failing to meet the requirements of the statute. *Id.*

¶ 18 "Nonetheless," according to the opinion of the court of appeals, "the deficiencies in the published notice do not have the effect of voiding Leucadia's extension application." *Longley*, 960 P.2d at 910. Here we cannot agree. This conclusion fails to take account of the consequences of inadequate notice. We hold that the deficiencies in the public notice rendered the notice invalid, and therefore Longley must be given the opportunity to have his objections to Leucadia's fifth extension request on its change application heard.

### II. STRICT COMPLIANCE WITH STATUTORY NOTICE REQUIREMENTS

¶ 19 " '[O]ne of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.' " *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 466 (Utah 1989) (quoting *Musich v. United States Smelting*, 113 Utah 101, 108, 191 P.2d 612, 616 (1948)). The water and irrigation statute directs that "[b]eneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state." Utah Code Ann. § 73–1–3 (1989). Thus, the public policy underlying the statutory scheme is that water resources should be put to "beneficial use" in this state, where water is a scarce and highly prized commodity. To assure the equitable distribution and the most efficient use of this scarce commodity, the legislature has mandated procedures that include the public in the consideration of requests to the State Engineer for extensions of time on change applications made more than fourteen years after initial approval. The statute requires both public notice of a hearing on such requests and information to the public of the "diligence claimed and the reason for the request." *Id.* § 73–3–12(2)(f)(ii).

¶ 20 One source of guidance in the interpretation of the notice portion of the statute consists of other cases considering public policy and strict compliance. In *Beltran v. Allan*, 926 P.2d 892 (Utah Ct.App.1996), *cert. denied*, 936 P.2d 407 (Utah 1997), the court held that a putative father was not entitled to an evidentiary hearing to establish custody over his child, despite allegations that he repeatedly asserted his intention to establish paternity and contest the adoption, because he did not strictly comply with the statutory requirement that he file a notice of paternity with the Utah Department of Health.[6] *See* 926 P.2d at 894–96. This court has acknowledged that the policy behind the putative

---

6. *See* Utah Code Ann. § 78–30–4.13(3)(a) (Supp. 1999). While Chapter 30 of the Utah Code has been amended since *Beltran* was decided, the substance of the statutes dealing with putative fathers has not changed, and we therefore refer to the most recent iteration of the law.

father filing statute is to "facilitate secure adoptions by early clarification of status," *Wells v. Children's Aid Soc'y*, 681 P.2d 199, 208 (Utah 1984), because adoptions require "a firm cutoff date," *Sanchez v. LDS Soc. Servs.*, 680 P.2d 753, 755 (Utah 1984). This line of reasoning was followed in *Beltran*, despite the infant's relinquishment to the placement agency within three days of its birth and placement with the adoptive parents that same day. *See Beltran*, 926 P.2d at 894. Thus, even a putative father's loss of the opportunity to establish rights to custody of his child did not prevent the court of appeals from finding that the legislative intent in pursuit of a strong public policy required strict adherence to statutory notice requirements.

¶ 21 Another statute that has been interpreted as requiring strict compliance with statutory notice requirements is the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38 (1997 & Supp.1999). Suit may not be brought against a governmental entity before a party files written notice of a claim with the entity involved. *See* Utah Code Ann. § 63–30–11(2) (Supp. 1999). The notice must contain "(i) a brief statement of the facts; (ii) the nature of the claim asserted; and (iii) the damages incurred by the claimant so far as they are known." *Id.* § 63–30–11(3)(a). "We have consistently required strict compliance with the requirements of the Immunity Act. Actual notice does not cure a party's failure to meet these requirements." *Rushton v. Salt Lake County*, 1999 UT 36, ¶ 19, 977 P.2d 1201. Again, as in the case of putative fathers, strict compliance with notice requirements in governmental immunity cases serves an important public purpose: " 'provid[ing] the governmental entity an opportunity to correct the condition that caused the injury, evaluate the claim, and perhaps settle the matter without the expense of litigation.' " *Id.* at ¶ 20 (quoting *Larson v. Park City Mun. Corp.*, 955 P.2d 343, 345–46 (Utah 1998)).

¶ 22 We perceive no reason to treat the statutory notice requirement any less strictly in the water rights context than we treat it in the putative father and govern-

mental immunity contexts. The State Engineer, an officer of the state, occupies a position of critical importance and power in the execution of water policy. If the public has no notice of how an applicant claims to have put the water to beneficial use or of the reasons the applicant claims are the cause of significant delay, the purpose of the statutory scheme is defeated. The State Engineer may well be deprived of significant information known only to interested members of the public, including water users and water right holders, and the public will be denied its role in the process of equitable water development contemplated by the statute.

### III. THE ROLE OF THE STATE ENGINEER

¶ 23 This case illustrates the necessity for a public voice in furthering the water policy of beneficial use. Leucadia's original application was filed in 1970, yet as of the mid–1990s no water at all had actually been derived pursuant to the application. Fifteen years after the initial application was granted, the State Engineer's Memorandum Decision granting Leucadia's request for extension of time to November 30, 1989, did so only on "the condition that this shall be the last request granted and proof of appropriation shall be submitted on or before that date or the application will be lapsed. *Requests for further extension of time will be denied.*" State Eng'r Mem. Decision No. 81–670(A36857) (Dec. 30, 1985) (emphasis added). Longley alleges that approximately four years after the State Engineer's 1985 Memorandum Decision, just before the "final" expiration of time on Leucadia's application, he inquired about the application and provided the State Engineer with his address so that he might receive actual notice regarding its status. While we do not hold that such actual personal notice was required by the statute, we note that had such notice been mailed directly to Longley, this litigation would likely have been avoided.

¶ 24 Despite the two signature spaces for Leucadia's agent and proof engineer on the proof of permanent change form, Leucadia's filing of proof on the *last day possible* contained neither signature. While such a lapse

may have been a mere oversight on Leucadia's part, it may also have been intentional, inasmuch as the document contained misrepresentations of concrete steps taken to effect permanent change; these factual statements were found by the State Engineer to have been "not correct." State Eng'r Mem. Decision No. 81–670(a6393) (July 10, 1992). Undeterred, some ten months after filing the proof of permanent change, Leucadia requested that the incorrect proof of permanent change be withdrawn, and filed both its request for reinstatement of its change application and a request for a fifth extension. Two years later, in 1992, the State Engineer rejected these requests, on the basis of Leucadia's failure to do what the statute intended, that is, put the water to "beneficial use," and also for its failure to "compl[y] with rules and regulations." *Id.* The State Engineer's 1992 decision was clearly correct in light of his findings that Leucadia's filings contained false factual assertions. It is a mystery why the State Engineer did not simply terminate Leucadia's rights at that time.

¶ 25 Seventeen months after its unequivocal rejection of Leucadia's requests, the State Engineer returned Leucadia's fifth extension request so it could be notarized and, without waiting for the notarization to be received, ignored its own previous findings and decision in the matter and honored Leucadia's September 1990 request to withdraw its discredited proofs of appropriation and of permanent change. The State Engineer justified this reversal by explaining that its previous decision, finding that Leucadia did not do what it represented it had done, "may have been inappropriate" because Leucadia requested that the proof of appropriation be withdrawn, even though Leucadia's request came nearly a year after its submission and two months after a site inspection by the Engineer's office. State Eng'r Amend. Mem. Decision No. 81–670(A36857) & (A6393) (Jan. 31, 1994). As indicated earlier, we disagree.

¶ 26 This is precisely the type of situation where the public needs to be adequately informed of the reasons given by an applicant for its request to extend (here, after nineteen years) and the "diligence" it claimed. As this

court has acknowledged, such notice "allows those persons who have a genuine concern about proposed changes in water rights to voice those concerns before the State Engineer and, as an important corollary, provides the State Engineer with all the viewpoints relevant to any proposal." *Badger v. Brooklyn Canal Co.,* 922 P.2d 745, 750 n. 9 (Utah 1996). Here, the legislature's intent that the public be given meaningful notice was not given effect. We hold that, because the public notice given regarding Leucadia's fifth extension request did not strictly comply with the statutory requirements pursuant to Utah Code Ann. § 73–3–12(2)(f)(ii), the notice was invalid and the statutory time period within which Longley was required to protest was never triggered. Longley's protest was therefore entitled to a hearing. Because the only basis upon which the district court found Longley to lack standing to appeal was untimeliness, we hold that Longley has standing and his objections must be heard.

## CONCLUSION

¶ 27 In light of the foregoing, we vacate the opinion of the court of appeals and reverse the district court's grant of summary judgment in favor of respondents. The case is remanded to the district court for further proceedings, including any necessary fact finding or hearings on the current status of the water rights in question and the appropriate remedies for relief in the event that changes to those water rights have occurred.

¶ 28 Justice WILKINS and Judge DEVER concur in Justice DURHAM's opinion.

HOWE, Chief Justice (concurring in the result):

¶ 29 I concur in the result on the ground that the notice published by the State Engineer did not substantially comply with the requirements of Utah Code Ann. § 73–3–12(2)(f)(ii) (Supp.1999). The court of appeals found that the notice was deficient but held that because Longley's property interest was not affected, the deficiencies in the published notice did not render Leucadia's extension application void. With that conclusion, I do not agree. While Longley's constitutional right to due process may not have been

violated, the above mentioned statute clearly gives him the right to a published notice that will inform the public of the diligence claimed and the reason for the request. Thus it is a statutory right, not a constitutional right, which has been violated. The notice was especially important in this case since the State Engineer had determined two years earlier that Leucadia's change application had lapsed.

¶ 30 Reference is made in the majority opinion that certain forms filed with the State Engineer by Leucadia were not "notarized." I find no mention in our water code that any form is required to be "notarized." Section 73–3–12(2)(d) provides that "all requests for extension of time shall be made by affidavit." Subsection 2(e) provides that "extensions not exceeding fourteen years after the date of approval may be granted by the state engineer upon a sufficient showing by affidavit." Section 73–3–16 provides for the filing of proof of appropriation or permanent change and requires in subsection (5) that "the proof on all applications shall be sworn to by the applicant or the applicant's appointed representative and proof engineer."

¶ 31 Thus it is not "notarization" that the statute requires. "Notarization" can simply refer to an acknowledgment of the signing of an instrument such as a deed of real property. *See* Utah Code Ann., title 57, ch. 2a. On the other hand, when statements in an application with the state engineer are required to be "sworn to" (verified) or made by affidavit, the applicant swears to the truthfulness of the representations made in the application. This is an important distinction. For example, in *First Security Mortgage Co. v. Hansen*, 631 P.2d 919 (Utah 1981), a corporate acknowledgment was used instead of a sworn statement that the contents of a lien notice were true. In that case, this court held that the lien notice was not properly verified as required by statute and was therefore invalid. *See id.* at 922.

¶ 32 Associate Chief Justice RUSSON concurs in Chief Justice HOWE's opinion concurring in the result opinion.

¶ 33 Having disqualified himself, Justice DURRANT does not participate herein; District Judge L.A. DEVER sat.