2003 UT 56

Ladell C. PRISBREY, Plaintiff and Appellant,

v.

BLOOMINGTON WATER COMPANY; Jerry D. Olds, State Engineer; and Leucadia Financial Corporation, a Utah corporation, Defendants and Appellees.

No. 20010465.

Supreme Court of Utah.

Dec. 5, 2003.

Aaron J. Prisbrey, St. George, for plaintiff.

Kendrick J. Hafen, Santa Clara, for Bloomington Water Co.

Mark L. Shurtleff, Att'y Gen., Norman K. Johnson, Heather Shilton, Michael Steeves, Asst. Att'ys General, Salt Lake City, for the State Engineer.

Thomas W. Clawson, Salt Lake City, for Leucadia Financial Corp.

NEHRING, Justice:

¶ 1 Ladell Prisbrey appeals from the district court's grant of summary judgment in favor of Bloomington Water Company and the state engineer. Mr. Prisbrey protested the state engineer's approval of Bloomington's application to change the point of diversion of specified Bloomington water rights. We affirm.

¶ 2 Bloomington Water Company is the record owner of certain water rights in Washington County, Utah, which it leased to Leucadia Financial Corporation. Leucadia asked Bloomington, as record owner, to file an application with the state engineer to permanently change the point of diversion and place of use for the water rights. Bloomington complied.

¶ 3 As required by section 73–3–6 of the Utah Code, the state engineer published notice of the Bloomington change application in *The Spectrum,* a newspaper of general circulation in Washington County, on April 26, 1999, and again on May 6, 1999. The state engineer's notice also included change applications made by parties other than Bloomington. The notice specifically stated that all of the change applications concerned water rights in Iron and Washington Counties, located in the Salt Lake Base and Meridian. Pursuant to section 73–3–7 of the Utah Code, the notice also alerted those objecting to a change application of the need to file a clearly readable protest at a specified address on or before May 26, 1999.

¶ 4 The state engineer's notice of the Bloomington change application contained information useful to interested parties, including (1) the number of the water right, (2) the name of the record title holder, (3) the quantity of water flow at the proposed point of diversion, measured in cubic feet per second (cfs), (4) the source of the water, (5) the locations of the existing and intended points of diversion, and (6) the nature of use.

¶ 5 The state engineer communicated the locations of the points of diversion using terminology established by convention and longstanding practice. The relevant geographic data for all the change applications that appeared in *The Spectrum* with Bloomington's were set out in a form utilizing the same established conventions.

¶ 6 Notwithstanding the state engineer's notice, Mr. Prisbrey, owner of real property adjacent to the land where the proposed points of diversion were located, did not file a timely protest to the Bloomington change application. Consequently, Mr. Prisbrey was not a party to the administrative proceeding on October 15, 1999, when the state engineer approved Bloomington's proposed changes.

¶ 7 On November 12, 1999, Mr. Prisbrey filed a petition for judicial review of the state engineer's proceeding in district court, naming Bloomington and the state engineer as parties. Shortly afterward, Mr. Prisbrey filed an amended petition joining Leucadia as a party. Bloomington moved for summary judgment, asserting that Mr. Prisbrey lacked standing to challenge the change application proceedings because he had failed to exhaust his administrative remedies by filing a timely protest. Mr. Prisbrey opposed the motion, claiming the state engineer's published notice was defective in form and therefore invalid. The district court granted Bloomington's motion for summary judgment, and Mr. Prisbrey made the appeal now before us.

## ANALYSIS

¶ 8 Mr. Prisbrey argues that the state engineer failed to strictly comply with Utah's statutory requirements regarding public notice of change applications. These alleged shortcomings include (1) legal descriptions of

the points of diversion in the change application that are "virtually undecipherable," (2) misleading information which describes the points of diversion as "southeast of Little Valley," and (3) failure to identify Leucadia, as lessee of the water rights, as the applicant in the notice, instead of Bloomington.

¶ 9 Section 73–3–6 of the Utah Code provides, in pertinent part, for notice of water right change applications as follows:

(1)(a) When an application is filed in compliance with this title, the state engineer shall publish, once a week for a period of two successive weeks, *a notice of the application informing the public of the contents of the application and the proposed plan of development.*

Utah Code Ann. § 73–3–6(1)(a) (Supp.2003) (emphasis added). In interpreting this statute, we have recently held that notice of change applications must be in strict compliance with these provisions, otherwise "the public will be denied its role in the process of equitable water development contemplated by the [notice provision] statute." *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 22, 9 P.3d 762.

¶ 10 Section 73–3–3 specifies the contents of a change application that the state engineer must disclose to the public in a published notice:

(4)(b) Applications . . . shall set forth:

(i) the name of the applicant;

(ii) a description of the water right;

(iii) the quantity of water;

(iv) the stream or source;

(v) the point on the stream or source where the water is diverted;

(vi) the point to which it is proposed to change the diversion of the water;

(vii) the place, purpose, and extent of the present use;

(viii) the place, purpose, and extent of the proposed use; and

(ix) any other information that the state engineer requires.

Utah Code Ann. § 73–3–3(4)(b) (Supp.2003). In their briefs to this court, both Bloomington and Mr. Prisbrey provided copies of the actual notice published by the state engineer in *The Spectrum.*[1] An examination of the published notice reveals that the necessary items of information were, in fact, fully disclosed, up to and including "other information" required by the state engineer, in this case the depth and diameter of the disclosed wells.

█ ¶ 11 The "virtual undecipherability" charge leveled by Mr. Prisbrey is directed at the nomenclature used to describe the locations of the existing and proposed points of diversion. This is the centerpiece of Mr. Prisbrey's first claim on appeal.

¶ 12 Mr. Prisbrey contends that the published description of the points of diversion in the Bloomington change application failed to properly reference the standard descriptive terms, township, range, or section. Accordingly, Mr. Prisbrey concludes that the notice of change application did not strictly comply with the statutory requirements and is therefore invalid. We disagree.

¶ 13 Section 73–3–2 of the Utah Code provides that points of diversion in applications for water appropriation can be designated with reference to United States land survey corners. Utah Code Ann. § 73–3–2(2)(d)(i) (Supp.2003). Contrary to Mr. Prisbrey's assertion, the published notice ties each proposed point of diversion to United States land survey corners. The grammatical vehicle used to communicate the relevant legal descriptions is a run-on sentence, disfavored by grammarians, but embraced as a longstanding convention commonly used by the state engineer to provide accurate and nonrepetitive information in public notices.

¶ 14 The state engineer's notice in *The Spectrum* was entitled "Notice to Water Users." It stated in the heading that the change applications were in "Iron/Washington County (Locations in SLB & M)." "SLB & M" is the abbreviation for Salt Lake Base and Meridian, the primary United States

---

1. Copies of the notice provided in the briefs of both parties were partially illegible, and consequently of limited use to us, requiring that we make a special request for clear copies of the notice. We respectfully remind all parties submitting briefs and appearing before this court that all appendices, exhibits, and copies must be completely legible.

Geological Survey reference point in this area. The published notice of the Bloomington change application, under the heading "Washington County," appeared in its entirety as follows:

> 81–441 (a23227): Bloomington Water Company Incorporated propose(s) to change the POD [point of diversion] & POU [place of use] of water as evidenced by Application A32568, as amended by a7973, Certificate 9629. HERETOFORE: QUANTITY: 2.33 cfs. SOURCE: 14 in. well 67 ft. deep. POD (1) N 2942 W 1951 from SE Cor, Sec 6, T43S, R15W. USE: Irrigation: total acreage 615.0000 acs, sole supply 138.6300 acs. POU: SW¼NW¼ Sec 7; S½NE¼, SE¼NW¼, N½SE¼ Sec 8, T43S, R15W; S½NE¼, SE¼ Sec 11; S½, S½NE¼ Sec 12; NE¼, E½NW¼, NE¼SW¼, NW¼SE¼ Sec 13; N½NE¼, NE¼NW¼ Sec 14, T43S R16W.
>
> HEREAFTER: QUANTITY: 2.33 cfs. SOURCE: Underground Water Wells (5). POD: (1) N 250 E 300 from SW Cor, Sec 24, 18 in. well 200 ft. to 600 ft. deep (2) N 300 E 0, 18 in. well 200 ft. to 600 ft. deep (3) N 250 E 400 from S¼ Cor, Sec 25, 18 in. well 200 ft. to 600 ft. deep (4) N 625 E 200 from S¼ Cor, 18 in. well 200 ft. to 600 ft. deep (5) N 500 W 350 from SE Cor, Sec 26, T43S, R15W., 18 in. well 200 ft. to 600 ft. deep. (SE of "Little Valley") USE: Same as Heretofore. POU: S½SW¼, SE¼ Sec 25; W½NE¼, E½NW¼, SW¼, S½SE¼, NW¼SE¼ Sec 26; SE¼SW¼, S½SE¼ Sec 27; E½, E½W½ Sec 34; W½ Sec 35, T43S, R15W.

¶ 15 In the long run-on sentences of this description, the state engineer used commas to separate complementary descriptive elements referring to each water well point of diversion, and semicolons to separate the description of each water well. This information included a reference to United States land survey corners, but information given at the end of the sentence is not repeated for each well. Rather, the sentence continues following a comma or semicolon, with the referenced well implied at the end of the sentence when the survey corner is given. Such use of commas conforms to standard writing rules. *The Chicago Manual of Style* confirms this, noting:

> 5.53 When two or more complementary ... phrases refer to a single word following, the phrases should be separated from one another and from the following word by commas:
>
> This harsh, though at the same time logical, conclusion provoked resentment among those affected.
>
> . . . .
>
> This road leads away from, rather than toward, your destination.

*The Chicago Manual of Style* § 5.53 (14th ed.1993).

¶ 16 For example, the published descriptions of the points of diversion (POD) for wells (2) and (3) appear as follows:

> POD: (1) N 250 E 300 from SW Cor, Sec 24, 18 in. well 200 ft. to 600 ft. deep (2) N 300 E 0, 18 in. well 200 ft. to 600 ft. deep (3) N 250 E 400 from S¼ Cor, Sec 25, 18 in. well 200 ft. deep to 600 ft. deep (4) N 625 E 200 from S¼ Cor, 18 in. well 200 ft. to 600 ft. deep (5) N 500 W 350 from SE Cor, Sec 26, T43S, R15W., 18 in. well 200 ft. to 600 ft. deep. (SE of "Little Valley")

Translated into unabbreviated, narrative grammatical form, the sentences read: "The point of diversion for well (2), 18 inches in diameter and 200 to 600 feet deep, is 300 feet north and 0 feet east from the Southern Quarter Corner, Section 25, Township 43 South, Range 15 West, Southeast of 'Little Valley'. The point of diversion for well (3), 18 inches in diameter and 200 to 600 feet deep, is 250 feet north and 400 feet east from the Southern Quarter Corner, Section 25, Township 43 South, Range 15 West, Southeast of 'Little Valley.'" Thus, the legal descriptions are readily decipherable using ordinary rules of grammar, punctuation, a ruler, and a United States Geological Survey map.[2]

---

**2.** Access to useful information for reading United States Geological Survey maps can be gained through the following websites, as of the date this opinion was issued: *http://www.outfit-ters.com/genealogy/land/twprangemap.html,* for reading township and range; *http://www.fir-stam.com/faf/dimensions/metes.html,* for reading metes and bounds; and *http://www.untraveled-*

¶ 17 As this court has previously stated, an "application of elementary rules of punctuation and grammar" is useful in the legal interpretation of a text. *State v. Tooele County,* 2002 UT 8, ¶ 13, 44 P.3d 680 (citation omitted). Federal courts have made similar observations, stating, for example, in a punctuation issue similar to the one presently before us, that the "use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all the previous phrases and not merely the immediate preceding phrase." *Elliot Coal Mining Co. v. Dir., Office of Workers' Comp. Programs,* 17 F.3d 616, 630 (3d Cir.1994).

¶ 18 We conclude, therefore, that the state engineer's legal descriptions of the proposed points of diversion, when read as a sentence consistent with the conventions by which they were written, were in strict compliance with the statutory disclosure requirements. Mr. Prisbrey's objection to the state engineer's published notice of change applications relates to the form of the notice, not to its substance.[3] The published notice was substantively correct, and Mr. Prisbrey points to no statutory authority to support his objection as to form.

¶ 19 "Our legislature has entrusted to the state engineer the responsibility of sorting out competing claims to Utah's scarce water resources." *United States Fuel Co. v. Huntington–Cleveland Irrigation Co.,* 2003 UT 49, ¶ 12, 79 P.3d 945. Accordingly, we rely on the state engineer's technical expertise and judgment in conducting the affairs of his office. The form of published notices of change applications is one such area of technical expertise, and this court will not substitute its judgment for that of the state engineer. As long as the published notices fully and accurately disclose the statutorily required information, as does the notice here, the form of the publication is within the proper discretion of the state engineer.

¶ 20 In addition, we agree with the district court's observation that Mr. Prisbrey, as a member of the "water-right holding community," must be presumed to understand the legal description nomenclature employed by the state engineer. Indeed, we have recently held that the reason for requiring strict statutory compliance relating to the contents and publication of notice of change applications is to "allow[ ] those persons who have a genuine concern about proposed changes in water rights to voice those concerns before the [s]tate [e]ngineer." *Longley v. Leucadia,* 2000 UT 69 at ¶ 26, 9 P.3d 762 (citation omitted). As applied to the present case, a person of "genuine concern" is someone who knows, or should know, the conventions of the state engineer.

¶ 21 Using this same analysis, Mr. Prisbrey's second claim on appeal—that the notice was misleading because it indicated the points of diversion as "southeast of Little Valley"—fares no better. "Southeast of Little Valley" was not meant to be, nor was it required to be, a specific description of the well locations. Those descriptions were already given in legal detail in the published notice. "Little Valley" is a term in common use on widely distributed government maps of southern Washington County, and "southeast of Little Valley" provided a reference to a general area, allowing interested readers to quickly find which water notices to read. Bloomington's water rights, the subject of the proposed change notice, are indeed located southeast of Little Valley. There is nothing inaccurate or misleading about the description. Again, Mr. Prisbrey challenges the form and not the substance of the descriptive term. And again, he fails to pro-

---

road.com/USA/Utah/SaltLake/SaltLake/99D, for the Salt Lake Base and Meridian. In addition, The Utah Division of Water Rights maintains the following website, with extensive information regarding change applications, the state engineer, hydrographic maps, and a glossary: *http://www.waterrights.utah.gov/default.htm.*

**3.** Nowhere does Mr. Prisbrey challenge the accuracy of the location descriptions of the proposed points of diversion. His objection is that the legal descriptions were invalid because they were "virtually undecipherable" to him. In fact, the description of the point of diversion for well (1) in the published notice was erroneous, and, as a result, that point of diversion was not approved by the state engineer. The inaccurate description of well (1) had no effect on the legal descriptions of the other points of diversion.

vide us with any statutory authority to indicate that the state engineer was required to describe the general area any differently. Accordingly, we conclude that the state engineer's published notice was not defective by reason of its general location reference to Little Valley.

██ ¶ 22 Mr. Prisbrey's third and final claim on appeal is that Leucadia, as Bloomington's lessee, was the only party entitled to use of the subject water under section 73–3–3 of the Utah Code, which governs the right to change a point of diversion. Mr. Prisbrey argues that the published notice of change was invalid because Leucadia was not listed as an applicant. We disagree with Mr. Prisbrey's contention that Leucadia, as lessee, is the only party entitled to use the water right.

¶ 23 Section 73–3–3 of the Utah Code provides in relevant part as follows:

(2)(a) Any person entitled to the use of water may make permanent or temporary changes in the:

(i) point of diversion;

(ii) place of use; or

(iii) purpose of use for which the water was originally appropriated.

Utah Code Ann. § 73–3–3(2)(a) (Supp.2003). Mr. Prisbrey builds his argument on the definition of "any person entitled to the use of water," whom he claims to be Leucadia in this case. However, we have previously held that this phrase refers strictly to a party who "alone owns the right as an appropriator to the use of public waters." *East Jordan Irrigation Co. v. Morgan*, 860 P.2d 310, 313 (Utah 1993). An "appropriator" is designated by statute to be a party who has made "an application [to] the state engineer" for the right to use water. Utah Code Ann. § 73–3–2(1)(a) (Supp.2003); *see also East Jordan Irrigation Co.*, 860 P.2d at 313 ("Utah Code Ann. § 73–3–2 requires any person seeking to appropriate water to do so by written application to the state engineer."). In this case, only Bloomington has made application

to the state engineer for use of the water rights in question. Thus, under the facts of this case, "any person," as used in section 73–3–3(2)(a), means only Bloomington Water Company. Bloomington "alone owns the right as an appropriator" of the water rights at the proposed points of diversion.

¶ 24 Furthermore, under its lease with Bloomington, Leucadia owns only a terminable possessory interest in the water rights and, because it acquired an option to buy its leased rights, an executory right to purchase them at some later date. Because Leucadia's interest in the water rights is for a fixed term, it would be illogical to permit Leucadia to make a permanent change in the point of diversion, place of use, or purpose for use. Were we to adopt Mr. Prisbrey's interpretation of section 73–3–3(2)(a), we would countenance the derogation of the rights of appropriators.

¶ 25 Accordingly, we conclude that Leucadia was not the only party entitled to the use of water under section 73–3–3 of the Utah Code, and that omitting Leucadia as an applicant did not render the state engineer's published notice of proposed change in any way deficient.

¶ 26 Since Mr. Prisbrey has not succeeded in demonstrating that the state engineer's published notice of Bloomington's proposed change application was somehow invalid, it necessarily follows that his protest to the change was not timely filed, and therefore not properly before the state engineer. Section 73–3–7 of the Utah Code unambiguously states that water change protests must be filed with the state engineer "within 30 days after the noticed is published, if the adjudicative proceeding is formal."[4] Utah Code Ann. § 73–3–7(1)(b) (Supp.2003). The published newspaper notice stated that protests were to be filed on or before May 26, 1999, and gave the mailing address of the state engineer in Salt Lake City. Mr. Prisbrey did not communicate his objections except by

---

**4.** Notwithstanding the state engineer's published notice indicating the proposed change proceedings were to be "informal," the state engineer granted thirty days for the filing of protests. Section 73–3–7 of the Utah Code provides twenty days for the filing of protests before "informal"

proceedings, and thirty days for the filing of protests before "formal" proceedings. Utah Code Ann. § 73–3–7(1)(a), (b) (Supp.2003). Thus, the state engineer in this case actually granted ten extra days to parties seeking to file protests.

letter, dated September 10, 1999, almost four months after the published due date. Even then, the letter was incorrectly sent to the Utah State Water Board in Cedar City. Clearly Mr. Prisbrey lacked standing, as a matter of law, to challenge the change application proceedings, having failed to exhaust his administrative remedies by filing a timely protest to the state engineer. We accordingly affirm the district court's grant of summary judgment in favor of Bloomington, dismissing Mr. Prisbrey's petition for judicial review of the state engineer's adjudicative proceedings.

## CONCLUSION

¶ 27 For the reasons discussed above, we hold that the state engineer's published notice of the Bloomington proposed change application was in strict compliance with the statutory requirements governing change application notices. We also hold that Mr. Prisbrey did not exhaust his administrative remedies by filing a timely protest with the state engineer, as required by statute. Accordingly, we affirm the trial court's decision to grant summary judgment in favor of Bloomington Water Company and the state engineer, thereby dismissing Mr. Prisbrey's petition.

¶ 28 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Judge BURTON concur in Justice NEHRING's opinion.

¶ 29 Having disqualified himself, Associate Chief Justice DURRANT does not participate herein, and Justice RUSSON did not participate herein; District Judge MICHAEL K. BURTON and then District Judge RONALD E. NEHRING sat.