## TANNER v. PROVO RESERVOIR CO. et al.

No. 4765.   Decided March 6, 1930.   (289 P. 151.)
Rehearing Denied June 26, 1930.

336

M. R. *Straw*, of Provo, for appellant.

*Abel John Evans*, of Lehi, *A. C. Hatch*, of Heber, and, *Booth & Brockbank*, of Provo, for respondents.

HARRIS, District Judge.

Plaintiff brings this action by which he contends he is "seeking to establish his water rights" in the irrigation system of the defendant Provo Reservoir Company. One of the principal items of controversy is whether or not, as the owner of 20⅓ shares of "primary water right" in the above company, he may require the company to deliver him water through its high line or main canal to the point of "general delivery," or whether he must accept this water through a lower ditch, referred to as the canal of the Provo Bench Canal & Irrigation Company.

The pleadings occupy eighty-seven pages of printed abstract, and the record approximately twelve hundred typewritten pages. No attempt will be made to set forth the substance of either the pleadings or the evidence, but reference will be made only to facts involved on points determined.

Briefly, it appears from the record that in August, 1919, the defendant Provo Reservoir Company entered into a contract to sell one J. C. Jensen ten acres of primary water right as defined by a certain resolution of the company to be used by Jensen in irrigating certain lands described therein, and on September 11, 1911, a similar contract for five acres of primary water right. The purchase price of the contracts was payable over a term of years, and on Novem-

ber 29, 1918, Jensen having completed the payments of the purchase price, the Provo Reservoir Company gave Jensen separate deeds which convey and warrant ten and five acres of "primary water right in grantor's Provo irrigation system" as defined by certain preambles and resolutions specifically referred to in the deeds. On December 12, 1912, defendant company executed a similar deed for five acres of primary water right which was given in exchange for water stock in the Blue Cliffs Canal Company.

The preambles above referred to contain, among others, the following provisions:

"Whereas, Provo Reservoir Company, a corporation, is the owner of certain water rights and applications to appropriate water for irrigation purposes, described in its articles of incorporation, and intends to secure other water rights and interests in addition thereto; which appropriations, rights and interests it proposes to utilize for purpose of furnishing a more adequate supply of water with which to irrigate the lands described in the application to appropriate water for irrigation, etc., above referred to, together with other lands that are capable of irrigation, with waters from Provo River, known as the Provo River System * * * it becomes necessary, in order to apply said water upon said lands, that this company, as the owner of the waterrights and the owners of the said lands upon which it is to be used, enter into agreements and stipulations, specifying the terms and conditions upon which said land owner will purchase and utilize said waters. * * *

"In order to convey the said waters from the several points of diversion named in said application, and from the points where the company has or may acquire rights, the company shall build a substantial canal system, consisting of reservoirs, earthen or concrete canals, concrete or other substantial flumes, tunnels and wood or steel pipes for the purpose of storing and conveying said waters to a point located near the Center of Section Twelve, in Township Six South, of Range Two East of the Salt Lake Meridian to be known as the point of General Delivery.' * * *

"The company agrees that when the said contract price for any of the said water rights, and the water rates herein provided for, shall have been fully paid, and the conditions by the consumer covenanted to be performed, have been complied with, it will execute to and in favor of the said consumer, his heirs and assigns a deed, conveying to him, or them, the said water right, together with

such pro rata interest in the said system as his interest in the said water rights shall represent; and thereafter, as to him the annual rates for maintenance and repair of the system hereinbefore provided for, shall cease, and he shall become an owner in fee simple of an undivided interest in the said system to the extent of the ratio which the number of acres and class of right purchased or acquired by him shall at such time or any subsequent time bear to the entire number of acres and class supplied with water from said system. * * *

"The company reserves the control, management, operation and regulation of the said system until January 1st, 1920, after which time, such control, etc., shall be exercised by those interested, in proportion to their respective interests."

The reservoir company constructed a number of reservoirs and canals, and prior to 1916 began delivering water at the point of general delivery, from which place it was taken in different canals and ditches by the purchasers of the water rights. Plaintiff's predecessor in interest, Jensen, and a large number of his neighbors, took their water through what is called the Iona lateral south and west for a distance of approximately two and one-half miles, where it emptied into one of the laterals of the Provo Bench Canal Company, and was carried by Jensen another mile west and one-half mile south, and used to irrigate the land described in the contract. The record is not clear just how much higher the point of general delivery is than Jensen's land, but the Iona lateral crossed the Union canal in a flume a little less than halfway between said point and Jensen's land. The Provo Bench canal is one of the older canals diverting water from the Provo river, with its point of diversion about two miles lower down on the river, and therefore covers much less land suited for irrigation than the Provo Reservoir Company's high line canal.

The court found (and we think correctly, under the evidence) that, by reason of the greater length of the Iona lateral, and the great loss of water in the lateral by seepage and evaporation, the owners and users of the water through the same requested the Provo Reservoir Company to arrange

to deliver their Provo reservoir water to them through the Provo Bench Canal Company's canal. This would change the course of this water from the Provo reservoir's high line canal to a point of diversion down the Provo river about two miles and then out through the lower canal and leave corresponding space in the higher canal for waters for other higher lands. The court further found in accordance with the request Provo Reservoir Company entered into an agreement with the Provo Bench Canal Company to enlarge the Provo Bench canal so that it would have capacity to supply water through the latter canal to all the users of the Iona lateral a total of approximately ten second feet; that in making this enlargement the Provo Reservoir Company expended about $25,000; that immediately thereafter Jensen and the other owners of the Iona lateral abandoned the same, and it was plowed in and its gates and flumes destroyed; and that at Jensen's request the company delivered Jensen his water through the Provo Bench canal each and every year from 1916 to 1925, which was shortly before the commencement of this action.

The defendants also claim that subsequent changes and additions to the reservoir and canal system have been made by the Provo Reservoir Company to which the plaintiff or his predecessor, Jensen, made no contribution, and that all of the space in the high line canal is now occupied by owners of the primary water rights, and, if the plaintiff and the other owners similarly situated can now change their point of use, as contended for, it would not only result in the loss of the money expended in enlarging the Provo Bench canal, but would require them to enlarge their present high line canal at a very great expense.

It also appears from the record that Jensen and a large number of others using the Iona lateral already owned stock in the Provo Bench canal, and that, by mingling their Provo reservoir water with their Provo Bench canal water, they were able to more efficiently irrigate their land.

The court further found, in substance, that the plaintiff, Caleb Tanner, was a civil engineer, and for many years, and during all the times of the enlargement of the Provo Bench canal, acted as engineer for the Provo Reservoir Company, and had counseled and advised said company in all matters relating to the diversion and distribution of the waters contracted for by it to the users thereof, and that the above contract with the Provo Bench Canal Company to enlarge its canal and the abandonment of the Iona lateral was made upon the advice of the plaintiff while he was so acting as their engineer, and that he acquired intimate knowledge of all the facts with reference to the said expenditure of money and change of point of diversion of the said waters while acting as such engineer; that Jens C. Jensen and the plaintiff at the time of the agreement to enlarge and the enlargement of the Provo Bench canal knew that the purpose and reason therefor was to abandon the Iona lateral and take the water, belonging to the stockholders of the Provo Reservoir Company using said lateral, through the Provo Bench canal, and knew of the expense incurred for such purpose.

It also appears from the record that on March 3, 1925, Tanner, having left the employ of the defendant reservoir company, entered into an agreement with Jensen to purchase 15 shares of the water rights by which Jensen conveyed said water rights to plaintiff, and plaintiff agreed to, within a reasonable time, litigate the right of Jensen (which is this action) to change his place of use of water from the Provo Bench canal to the high line of the Provo Reservoir Company, and, if successful, then the plaintiff was to convey to Jensen certain shares or units of water in the Provo Bench canal for the Provo Reservoir Company water rights, but, if unsuccessful, then plaintiff might return the Provo Reservoir water rights to Jensen. Plaintiff apparently traded outright for the other five shares from Jensen.

The Provo Reservoir Water Users Company, named as a defendant herein, is a mutual company organized in 1924 by

a very large majority of the owners of the water rights of the Provo Reservoir Company for the purpose of taking over their water rights and distributing the same, and to issue stock in the company to the owners of the water rights. Jensen and a few others refused to convey their rights to the new company, and plaintiff now claims, therefore, as the owner of the "water rights," to have a right to take his water through any canal of the Provo Reservoir Company's system and use it on any land he may care to irrigate.

The trial court found, as conclusions of law, that the defendants were entitled to a decree that plaintiff was not entitled to flow such shares of water right through the Provo Reservoir Company's main canal to the point of general delivery without the consent of the company. Apparently the conclusion of the trial court was based upon the theory of estoppel, and plaintiff challenges the sufficiency of the answer to plead an estoppel upon the ground that it is not alleged that plaintiff or Jensen made any false representations to the Provo Reservoir Company, or that the company acted relying on such representations, and the answer contains no allegations that the defendant would be injured by permitting plaintiff to take his water through the high line canal; and upon the further ground that it affirmatively appears that the deed was executed subsequent to the alleged representations, and therefore any right of estoppel was waived. It is alleged in the answer, in substance, among a long list of other things, that, when the holders of water rights in the defendant company, amounting to approximately forty second feet, discovered the great loss of water resulting through the use of the Iona lateral, they all requested the defendant to arrange to deliver their water to them through the Provo Bench canal, that, pursuant to the request, defendant entered into a contract with the Provo Bench Canal Company, and, at an expense of approximately $30,000, acquired the right to deliver to Jensen and the other users of the Iona lateral their

water through the Provo Bench canal, and that ever since the year 1916 Jensen and the other owners of water theretofore flowing through the Iona lateral took their water through the Provo Bench canal, and that to permit the change would result in great injury and damage to the Provo Reservoir Company.

As before stated, the pleadings are too long to set them out here. We have attempted to read the answer carefully, and are convinced that the same does allege sufficient facts to constitute a defense on the theory of estoppel.

It is contended that Jensen was not a party to the representations, yet he testified he knew of the enlargement of the Provo canal; that he helped to fix the laterals; that they wanted the water delivered through the lower canal because it would be better; and, while he denied the genuineness of his signature to a written petition to make the change, he said he would have signed it, and did not say that he had not authorized the signature. He took his water through the lower canal, and says he still wants it there. There is no merit to the contention that the facts of estoppel were not brought home to him. While this petition was informal in character, and has been held in a previous action between the parties not to constitute a contract for a change of place of diversion, it does seem to be sufficient to sustain a finding that Jensen represented he wanted to take his water through the lower canal. It appears at this stage of the proceedings Jensen joined with his neighbors in requesting the change, and he not only sat by and made no protest, but accepted his water that way for a long period of years, and still wants to take his water that way, but apparently plaintiff wishes to make a profit out of trading for his waters out of some special information he has gained as engineer and adviser of the company by setting up the fact that the deed was made after the change of the place of diversion of the Jensen water. We believe this set of facts to be such as to require the court to say that this plaintiff

ought not now to be heard to say he desires to take the water through the upper ditch. If he could make the change as to these twenty shares, there apparently is no reason why all of the other stockholders of the company owning the entire forty second feet should not be entitled to make a similar change.

The question then seems to be, Is this a case of merely changing the place of use which has been repeatedly held to be the right of an owner of water rights so long as he does not injure or interfere with the rights of others, or is this rather a case where under all the facts and circumstances the alleged right to change is barred because it cannot be made without interfering with the rights of others.

In 21 C. J. 1202, it is said:

"Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title or right, he cannot afterwards assume a position inconsistent with such act, claim or conduct, to the prejudice of another, who has acted in reliance on such conduct or representation. It is upon this just and equitable principle that a person is said to be estopped to take advantage of his own fraud or wrong. The doctrine of estoppel requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party."

And in the same volume at page 1209 it is said:

"One of the most familiar applications of the rule relating to acceptance of benefits arises in case of contracts. It has been repeatedly held that a person by acceptance of benefits may be estopped from questioning the existence, validity and effect of a contract."

Also at page 1216:

"Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice."

It would seem that the foregoing principles are controlling of the case here under the facts as stated.

This court in *Hilton* v. *Sloan*, 37 Utah 359, 108 P. 689, 694, became committed to the doctrine that:

"It is not necessary that in all cases and under all circumstances there must be shown an actual intention to deceive in order estop a person."

It is there also held that the doctrine of estoppel applies where a person undertakes to deny as true "that which she has by her solemn acts and daily conduct over a long period of years avowed as true."

In this case Jensen, by a long course of conduct, led the defendant Provo Reservoir Company to believe he wanted his water at the lower ditch. The company, relying on such conduct, went to great expense to enlarge the lower ditch so he could get his water there, and they claim they also used for other water rights the space thus vacated in the upper ditch, and to now permit the change would result in great loss to the defendant, so that he should be estopped from now saying that he wishes to change back to the main or higher canal. Suppose, instead of the company going to this expense of enlarging these canals, Jensen and his associates had done so, and for a time had been permitted to take the water through the same, and then the company had undertaken to compel them to take their water at the point of general delivery. It is admitted they could not succeed, because a similar set of circumstances, practically, was before this court in the case of *Arnold* v. *Huntington Canal & Reservoir Ass'n,* 64 Utah 534, 231 P. 622, 625. There the stockholders obtained permission of the company to transfer their water from a lower to a higher canal, and spent money constructing laterals to their land from the higher canal. The company later attempted to compel them to go back to the lower canal, and this court said they could not succeed, for the reason, among others:

"(1) Because the defendant after it had made the transfer stood by and permitted the plaintiffs to expend large sums of money, to wit, $2,500, in constructing new laterals through which they intended

to use the transferred water from the Huntington canal, instead of from the Avery ditch; (2) because the plaintiffs had to and did abandon their old laterals and the Avery ditch, which it would now require an additional expenditure of $2,500 to restore."

There were also other reasons why the court said the company should not be permitted to deliver the water at the new point, but it seems to the writer that the above reasoning is good logic and should catalogue this case among those where the right to change the place of use should be denied because of the injury that would result to the defendant.

Appellant argues with much zeal that the defendant company may not go back of its solemn deed, and that conduct or acts prior to the date of the execution of the deed may not be considered for the purpose of defeating the title granted in the deed. Let it be conceded that the above principle is good law. It does not appear to control this case, for no attempt is here made to defeat the plaintiff's title to the water rights. The acts relied upon are entirely consistent with plaintiff's title to the water rights, but the Provo Reservoir Company says, in effect:

"Notwithstanding your title to these water rights, by your conduct you fixed the canal through which you should take this water for beneficial use by you, and you may not now make such change because it cannot be made without injury to the company, first, because of the loss of money expended in acquiring right to use of the lower canal, and, second, because it would require great expense to enlarge the upper canal so as to now permit you to use the same."

The plaintiff is not seeking or offering here to pay the expense of change of place of diversion, as he is required to do under the case of *Salt Lake City* v. *Gardner*, 39 Utah 30, 114 P. 147. Neither is he attempting to proceed under the law of eminent domain to acquire the right to the use of this upper canal. He simply stands on the fact that he has a deed to a share in all the property and water rights of the Provo Reservoir Company. And whether or not he could proceed upon either of the above theories we are not called

upon to express an opinion, and we expressly refrain from doing so. Neither is it attempted to lay down any general rule as to when a stockholder may change the place of use of his water or may dispose of his stock in a water company and thereby change the place of use. If it be conceded this may be done so long as the rights of others are not injured, we are of the opinion that under the peculiar and somewhat unique facts of this case the change cannot be made because of its interference with the rights of the Provo Reservoir Company, as before stated.

By his second cause of action plaintiff seeks to establish a right to course through the upper canal of the defendant Provo Reservoir Company two and fifty-two hundredths second feet of water acquired by him from the waters of Provo river. He alleges that during a certain ■ period of the year (low water season) there is an excess capacity in the high line canal, and he claims the right to use this excess capacity by reason of the fact that he is the owner of his $20\frac{1}{3}$ shares of primary water right. In the language of counsel for appellant:

"The plaintiff by his second cause of action seeks to have the court define his right to use this unused space for the flowage of the two and fifty-two hundredths second feet of water or such part thereof as may be taken through the said canal and offers to pay any additional charges made necessary in operation by his use. It is the plaintiff's contention that these deeds and the plaintiff's ownership in the canal make him a tenant in common and as such he has the right to occupy such otherwise unused space (during the low water season) with his two and fifty-two hundredths second feet rights or some part of it."

Plaintiff cites only one case, *Brown* v. *Thurstein,* 83 Kan. 125, 109 P. 784, 29 L. R. A. (N. S.) 238. That case simply held that the mere occupation and use of the common property by one tenant in common does not make him liable for payment of rent to his cotenants who are not occupants. That case should have no controlling effect in this case, because, first, we have just determined that plaintiff's owner-

ship of twenty shares of primary water right does not entitle him to use the defendant's main canal or high line for that water right, and it would therefore seem that would be sufficient reason why he could not succeed in tacking on or adding to his use of that high line this additional two and fifty-two hundredths second feet; and, second, the preambles referred to and made a part of the deed conveying to plaintiff an "undivided interest in common" provides that "that company reserves the right to carry in and through the said system all such other water and water rights, in addition to those hereinbefore specifically described, as it may see fit, to the full capacity of the said system, and the proportionate ownership in said system above provided for shall be based upon all waters from time to time carried in the said system."

It would thus seem that the company reserved the right to use any excess space that might remain in the canal at any time. And to permit this plaintiff, without spending any money for right of way or construction of ditches, flumes, or irrigation works, to use the canal for his separate water by merely paying his additional share of operating expense, would seem to be stretching the so-called tenancy in common doctrine too far.

By his third cause of action plaintiff contends that he is seeking to establish the fact that his primary water rights in the Provo Reservoir Company are of equal value to the stock in the defendant Provo Reservoir Water Users Company, and alleges that the assertion by the defendants that a share of water right in the Provo Reservoir Water Users Company is inferior to, and a less water right than, a share of the stock of the Provo Reservoir Water Users Company, constitutes a slander of plaintiff's title, and asks for a restraining order against defendants giving out in speech or writing such assertions.

Plaintiff argues that, because the stock in the Provo Reservoir Water Users Company places the water rights

subject to corporate control and subject to assessment for corporate purposes over the entire district comprising generally all of Utah county east of the Jordan river and north of the Provo river, and the primary water right is a guaranteed right and the stock in the Provo Reservoir Water Users Company is not his water right, it is at least as valuabe as the water right in the Provo Reservoir Water Users Company. No authority has been cited calling to our attention a case sustaining such a cause of action. It has never occurred to the writer that courts should concern themselves with the relative merits of corporate and private control or ownership of water rights or irrigation systems. It is a matter of common knowledge that corporate management of irrigation systems has greatly increased in the Western States of recent years, and, if parties should disagree as to which method of handling water rights is the better, it is very doubtful if courts should undertake to settle such a dispute. The question of whether the third cause of action states a cause of action was not raised, and, for that reason, we do not pass on the matter, but merely suggest the doubt that a cause of action is stated. The defendant Provo Reservoir Water Users Company admits the making of the alleged statement, but claims the same to be true, and alleges that, since the organization of the Provo Reservoir Water Users Company they have purchased and acquired additional water rights from the Provo Reservoir Company, so that for their respective stockholders they may have a maximum of one hundred acres per second foot during low-water season, while the preambles and by-laws of the Provo Reservoir Company provide that the duty of water may be as high as one hundred fifty acres per second foot in low-water season. This allegation is denied by reply of the plaintiff.

This action was commenced in March, 1926. The answer was filed in January, 1927. The deed from the Provo Reservoir Company to the Provo Reservoir Water Users Company

dated in August, 1926, was received in evidence over plaintiff's objection, and he now assigns this as error, since the deed is dated after the date of the commencement of the action. The record shows that the contract for the water right was entered into long before the action was commenced, and the purchase price was paid and the deed issued before the answer was filed. The deed was within the issues, and properly received in evidence. This cause of action is an action seeking an injunction against making certain statements and not a suit to quiet title as of a certain date, and, if there be cases where the time of the commencement of the action controls subsequent issues, this is not such a case.

The trial court did not err in refusing the restraining order sought in the third cause of action.

Other errors are assigned, but we have not found any of them of sufficient importance to justify further lengthening this opinion. We find no reversible error in the record.

The judgment of the trial court is affirmed, with costs.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.

ELIAS HANSEN, J., being disqualified, did not participate herein.