2011 UT 33

**SALT LAKE CITY CORPORATION,**
Plaintiff and Appellee,

v.

**BIG DITCH IRRIGATION COMPANY,**
James Garside, J L.C., and Ryan Litke,
Defendants and Appellants.

No. 20090757.

Supreme Court of Utah.

June 28, 2011.

Edwin C. Barnes, Steven E. Clyde, Wendy Bowden Crowther, Salt Lake City, for plaintiff.

David C. Richards, Phillip E. Lowry, J. Bryan Quesenberry, Salt Lake City, for defendants.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 This case involves a water rights dispute between Salt Lake City Corporation (the City) and Big Ditch Irrigation Company (Big Ditch). The dispute has its roots in a 1905 water exchange agreement (the Agreement or the 1905 Agreement) between the City and Big Ditch. In the Agreement, Big Ditch conveyed its Big Cottonwood Creek water right to the City in exchange for the City's commitment to supply Big Ditch with a specified quantity of irrigation-quality water from City sources.

¶ 2 Concerned that Big Ditch was infringing upon the City's water rights, the City initiated this case against Big Ditch and four Big Ditch shareholders [1] (the Shareholders) in the Utah district court. The City sought a declaratory judgment on the following issues: (1) that the City was not in breach of the Agreement, (2) that the City holds title to the water rights conveyed in the Agreement, (3) that Big Ditch has only a contractual right to receive from the City sufficient water to satisfy the irrigation needs of its shareholders, and (4) that neither Big Ditch nor the Shareholders have a right to file change applications with the State Engineer involving the water rights. Big Ditch and the Sharehold-

ers responded with counterclaims alleging, among other things, breach of the 1905 Agreement and violation of the Utah Antitrust Act.

¶ 3 The district court granted summary judgment in favor of the City on most major issues. Big Ditch and the Shareholders appealed. We hold that the district court properly dismissed the antitrust counterclaims and correctly concluded that the City holds title to the water rights conveyed in the Agreement. But we hold that the district court erred in determining that Big Ditch did not have a right to file change applications. And it further erred in determining that the parties had modified the 1905 Agreement or, alternatively, that Big Ditch was estopped from enforcing its right to the amount of water specified in the Agreement. Finally, we hold that the district court erred when it refused to dismiss the City's claims against the Shareholders.

## FACTUAL BACKGROUND [2]

¶ 4 In 1905 the City and Big Ditch entered into a water exchange agreement.[3] The Agreement states that Big Ditch "grants, bargains and sells" to the City "all of the right of . . . [Big Ditch's] portion of the water flowing in Big Cottonwood Creek." In return, the City agreed to "perpetually and continuously deliver to [Big Ditch] from the first day of April until the first day of October" a flow of water "suitable for the purposes of irrigation" in an amount tied to the measured flow of the creek. The City was required to deliver the water to the Big Ditch canal at a diversion structure that the City agreed to construct and maintain. The Agreement also provided that the City may deliver the water to Big Ditch from any source that the City may see fit.

¶ 5 Pursuant to the 1905 Agreement, the City has delivered irrigation-quality water to

---

1. One shareholder, Layne Downs, was subsequently dismissed.

2. Because this is an appeal from multiple entries of summary judgment, we consider "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d

600 (internal quotation marks omitted). In this case, the nonmoving parties are Big Ditch and the Shareholders.

3. According to the City, between 1888 and 1984, the City entered into thirty-two such "exchange agreements" with area agricultural water users.

the head of the Big Ditch system for over one hundred years. Big Ditch has, in turn, operated the City's control valve to distribute to its shareholders the amount of water needed for irrigation purposes. Over the years, the amount of water taken by Big Ditch has steadily decreased, commensurate with increasing residential and commercial development in the area surrounding the Big Ditch service area. At all times, "stream commissioner reports" have been generated that advised Big Ditch that it was entitled to a much greater flow of water than it had been taking. This entitlement calculation was based on the formula set forth in the Agreement.

¶ 6 This controversy arose in the latter half of 2006 when Big Ditch, sometimes joined by one of its shareholders, J L.C., filed a series of change applications with the State Engineer seeking to change central attributes of its exchange water right. For example, one application sought to move the point of diversion to a series of wells in the southwest portion of the Salt Lake valley and to change the place of use from the Big Ditch system to Riverton City. In this application, Big Ditch proposed to receive its delivery from the City at the head of the Big Ditch system (as specified in the Agreement) and then deliver the water "back into the Big Cottonwood Creek and/or the Jordan River to administer the change." The City lodged challenges to these change applications with the State Engineer arguing, among other

reasons, that Big Ditch did not "own" the water rights affected by the applications.

¶ 7 The City initiated this case in the district court on March 8, 2007. In its Complaint, the City named as defendants Big Ditch and several shareholders of Big Ditch.[4] The City sought the following declaratory relief: that it holds title to the water rights conveyed in the Agreement; that neither Big Ditch nor its shareholders have a right to file change applications involving those water rights; that the City is not in breach of its delivery obligations under the Agreement; and that Big Ditch and its shareholders have only a contractual right to receive from the City sufficient water to satisfy the irrigation needs of Big Ditch shareholders whose lands are served by the Big Ditch system.[5]

¶ 8 Big Ditch and the Shareholders filed an Answer, Counterclaims and Jury Demand. The only counterclaim at issue in this appeal is one alleging that the City violated the Utah Antitrust Act.[6] At the core of the antitrust claim is Big Ditch's allegation that the City has illegally monopolized the Big Cottonwood Canyon water market and thereby unreasonably restrained trade of Big Cottonwood Canyon water.

¶ 9 The City filed a rule 12(b)(6) motion to dismiss the antitrust counterclaim. Shortly thereafter, the Shareholders sought dismissal of the City's claims against them by filing a Motion for Partial Summary Judgment for Failure to State a Claim. They argued that, as stockholders, officers, or directors of Big

---

4. The named shareholders included James Garside; Ryan Litke; Layne Downs; and J L.C., a Utah limited liability company. The City contends that the named shareholders are all affiliated individuals who recently acquired a majority stake in Big Ditch stock for purely speculative purposes. This assertion is based on the City's allegation that none of these shareholders owns land within the Big Ditch irrigation system. Rather, according to the City's complaint, these shareholders acquired stock with the intention of asserting claims to, and marketing for a profit, the water rights subject to the 1905 Agreement.

   In addition to the four named shareholder defendants, the City also named as defendants "John Does 1 through 10." The City asserted that these unnamed individuals are "individuals or entities that own no land that has historically been irrigated by the Big Ditch system and that have purchased stock in Big Ditch for the pur-

pose of speculating in the value of the stock and the water rights they believe to be represented by that stock." The City stated that it would seek leave to amend its complaint to identify the John Does when their identities were discovered. It never sought such leave, and no additional shareholders were ever added as defendants.

5. The City's complaint also asserted a claim for slander of title. This claim was dismissed by the district court. The City did not appeal this dismissal and therefore this claim is not before us.

6. Big Ditch and the Shareholders also alleged breach of the Agreement, tortious interference with prospective business relationships, slander of title, forfeiture, and violation of the Utah Unfair Trade Practices Act. The parties stipulated to dismissal of the Unfair Trade Practices Act claim. Big Ditch has not appealed the dismissal of the other claims.

Ditch, they were not proper parties to the City's declaratory relief action.

¶ 10 The district court issued a memorandum decision in which it refused to dismiss the City's claims against the Shareholders but dismissed with prejudice Big Ditch and the Shareholders' antitrust counterclaims. The district court declined to dismiss the claims against the Shareholders because, according to the court, the Shareholders were pursuing counterclaims against the City and because the Shareholders "reli[ed] solely upon the allegations of the City's Complaint and have provided no other evidence to support their motion."

¶ 11 The district court dismissed the antitrust claims on the grounds that Big Ditch and the Shareholders had failed to allege specific anticompetitive conduct that would violate the statute. In the alternative, it held that, even assuming the activities of the City's water utility could be viewed as anticompetitive, they were authorized by law and were therefore exempt from the Utah Antitrust Act.

¶ 12 Big Ditch and the Shareholders filed a Motion for Partial Summary Judgment on the issue of the quantity of water to which Big Ditch was entitled. They argued that the Agreement did not limit Big Ditch's use of the contract water to only irrigation purposes and did not contemplate a diminishing delivery of water as the area became urbanized. The City responded with its own motion for summary judgment, in which it asked the district court to declare (1) that the City has met and continues to meet its contractual obligations to Big Ditch, (2) that the City owns the water rights in question, and (3) that neither Big Ditch nor its shareholders have authority to file change applications respecting the water rights.

¶ 13 Big Ditch filed a Motion for Partial Summary Judgment on Title and Exchange Rights. In this motion, Big Ditch argued that it, and not the City, holds title to the Big Cottonwood Creek water rights.

¶ 14 After further oral argument, the district court issued another memorandum decision. It held that the 1905 Agreement did not restrict the nature or place of use of water delivered by the City to Big Ditch. It also ruled that the City held title to the Big Cottonwood Creek water rights. The district court expressly reserved for later consideration whether Big Ditch or its shareholders could file change applications on the water rights. It also declined at that time to consider the City's arguments that the 1905 Agreement had either been modified or that Big Ditch was estopped from claiming its full entitlement under the Agreement.

¶ 15 Big Ditch filed a "Motion for Partial Summary Judgment Re Estoppel and Modification (All Remaining Causes of Action)," in which it sought summary judgment on all pending issues. The City similarly filed a motion for summary judgment on all remaining issues.

¶ 16 The district court accepted the parties' invitation to decide all remaining issues and, after hearing oral argument, issued its final memorandum decision. The court granted the City's motion and denied Big Ditch's and the Shareholders' motions. It held that, based on the parties' admitted, consistent conduct over the decades, the principles of estoppel and modification prevented Big Ditch from taking the amount of water originally specified in the Agreement. The court also ruled that Big Ditch's contractual right to receive irrigation water from the City did not entitle Big Ditch or the Shareholders to file change applications on either the City's Big Cottonwood Creek water rights or the other water rights used by the City to supply irrigation water to Big Ditch. The district court entered its Final Order and Judgment on August 12, 2009, summarizing its central rulings in the case.

¶ 17 Big Ditch and the Shareholders timely appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(j) (Supp.2010).

## STANDARDS OF REVIEW

¶ 18 Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c). We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions. *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600.

¶ 19 Whether a court properly granted a 12(b)(6) motion to dismiss is a question of law, which we review for correctness. *Whipple v. Am. Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996). The interpretation of a contract is a question of law, which we review for correctness, giving no deference to the ruling of the district court. *Aquagen Int'l, Inc. v. Calrae Trust*, 972 P.2d 411, 413 (Utah 1998). Interpretation of our case law is also reviewed for correctness, *Stevensen v. Goodson*, 924 P.2d 339, 346 (Utah 1996), as is the interpretation of a statute, *Rushton v. Salt Lake Cnty.*, 1999 UT 36, ¶ 17, 977 P.2d 1201.

## ANALYSIS

¶ 20 Big Ditch and the Shareholders each raise multiple issues on appeal. We have grouped them into five categories. First, we analyze the propriety of the district court's refusal to dismiss the City's claims against the Shareholders and hold that it was in error. Second, we address the district court's title ruling and hold that it correctly concluded that the City holds title to all of the exchange water. Third, we analyze the district court's conclusion that Big Ditch does not have a right under Utah Code section 73–3–3 to file change applications with the State Engineer and hold that the court erred. Fourth, we review the district court's ruling that the doctrines of equitable estoppel and modification bar Big Ditch from demanding the full amount of water to which it was entitled under the 1905 Agreement and hold that it was in error. Finally, we analyze the propriety of the district court's dismissal of Big Ditch and the Shareholders' antitrust counterclaims and affirm that dismissal.[7]

## I. THE CITY'S CLAIMS AGAINST THE SHAREHOLDERS MUST BE DISMISSED

¶ 21 After the Shareholders answered the City's complaint, they sought dismissal of the City's claims against them by filing a Motion for Partial Summary Judgment for Failure to State a Claim. The district court denied the motion. It refused to dismiss the Shareholders because they were pursuing counterclaims against the City and because it concluded they had not met the summary judgment standard. The Shareholders contend that the district court improperly applied the summary judgment standard. They also argue that they are immune from suit under the "corporate shield doctrine" because the City's claims were brought against the Shareholders in their capacity as holders of Big Ditch stock. As discussed below, we agree with the Shareholders and hold that the district court erred in refusing to dismiss the City's claims against them.

### A. Where There Are No Disputed Issues of Fact, the Standard for Granting a Motion for Summary Judgment Is the Same as the Standard for Granting a Rule 12(b)(6) Motion to Dismiss

¶ 22 The Shareholders sought dismissal of the City's claims by filing a Motion for Partial Summary Judgment for Failure to State a Claim. The court refused to dismiss the City's claims because the Shareholders "rel[ied] solely upon the allegations of the City's Complaint and have provided no other evidence to support their motion." The Shareholders allege this was error because they were not obligated to come forward with evidence to support their motion. Rather, under the circumstances of this case, the applicable summary judgment standard is the same as the standard governing motions to dismiss. We agree.

¶ 23 Some rule 12 defenses are waived unless "presented either by motion or by answer or reply." UTAH R. CIV. P. 12(h). The defense of failure to state a claim for

---

7. Big Ditch also claims that the district court erred when it denied Big Ditch's motion to reconsider whether title had been conveyed to the City, and the Shareholders contend that the district court improperly denied their motion for a stay pending discovery. Because neither of these issues was argued in the briefs, we decline to address them. *See W. Jordan City v. Goodman*, 2006 UT 27, ¶ 29, 135 P.3d 874; *Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998). Moreover, because we conclude as a matter of law that the district court correctly held that Big Ditch conveyed to the City title to its original water rights, we need not address whether the district court abused its discretion in denying the motion to reconsider that ruling.

which relief can be granted is not subject to waiver in this way. In fact, a defendant may raise the defense of failure to state a claim "by a later pleading ... or by motion for judgment on the pleadings or at the trial on the merits." *Id.* Irrespective of when the defense is raised, if the plaintiff is unable to prevail under the facts as alleged, this claim fails as a matter of law and must be dismissed. *Compare Russell v. Standard Corp.,* 898 P.2d 263, 264 (Utah 1995) ("A rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts." (internal quotation marks omitted)), *with* UTAH R. CIV. P. 56(c) (providing that summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law").

¶ 24 Here, the Shareholders sought dismissal of their claims by (1) accepting as true the factual allegations contained in the City's complaint and (2) challenging the legal sufficiency of those alleged facts. Thus, the district court faced only the following legal question: assuming the facts alleged by the City are true, has the City stated a viable claim against the Shareholders? The Shareholders were entitled to rely solely on the allegations in the City's complaint and if those allegations did not support a claim against the Shareholders, the court should have dismissed them.

### B. As Big Ditch Stockholders, the Shareholders Are Immune From the City's Claims

¶ 25 The Shareholders argued in the district court that they are immune from the City's claims because the claims were brought against them in their capacity as shareholders. The district court rejected this "corporate shield" argument. It reasoned that the Shareholders "cannot take the inconsistent position" that they have individual standing to bring counterclaims against the City but that the City cannot bring claims against them. "Clearly, if the Shareholders have ... standing to assert these claims independent of Big Ditch, they can also be sued in their individual capacities."

The district court apparently treated the filing of the Shareholders' counterclaims as the equivalent of a judicial determination that the Shareholders had standing to bring those counterclaims. In essence, it concluded that the Shareholders could not rely on the corporate shield doctrine to seek dismissal of the City's claims against them because they had asserted counterclaims against the City. This ruling was in error.

¶ 26 The fact that the Shareholders alleged counterclaims against the City does not legitimize the City's otherwise illegitimate claims against the Shareholders. The district court did not determine that the Shareholders actually had standing to bring counterclaims against the City in their individual capacity. If it had, perhaps it could have reasonably concluded that the corporate shield doctrine did not apply. But the City never challenged the Shareholders' standing to file the counterclaims, and the court simply did not consider the issue. Thus, the court erred when it equated the Shareholders' assertion of counterclaims with a judicial determination that the Shareholders actually had standing to bring those counterclaims. Rather, the district court should have considered the merits of the Shareholders' argument that they were immune from suit under the corporate shield doctrine.

¶ 27 Generally officers and stockholders of corporations are "not held to be in privity with their corporations and are not personally bound by judgments against those corporations." *Brigham Young Univ. v. Tremco Consultants, Inc.,* 2005 UT 19, ¶ 37, 110 P.3d 678; *see also Reedeker v. Salisbury,* 952 P.2d 577, 582 (Utah Ct.App.1998) ("The general rule is that a corporation is an entity separate and distinct from its officers, shareholders and directors and that they will not be held personally liable for the corporation's debts and obligations." (internal quotation marks omitted)). The doctrine applies to nonprofit corporations with equal force. *See* UTAH CODE ANN. § 16–6a–115 (2009) ("The directors, officers, employees, and members of a nonprofit corporation are not personally liable in their capacity as directors, officers, employees, and members for the acts, debts, liabilities, or obligations of a nonprofit corpo-

ration."). Thus, when an officer or director acts in his or her official capacity, he or she is immune from individual liability. *Reedeker,* 952 P.2d at 582. "This is true whether the corporation has many stockholders or only one." *Colman v. Colman,* 743 P.2d 782, 786 (Utah Ct.App.1987).

¶ 28 There are instances where a party may properly name shareholders as defendants, such as when seeking to "pierce the corporate veil" or attempting to establish that a shareholder is the "alter ego" of a corporation. *See Smith v. Grand Canyon Expeditions Co.,* 2003 UT 57, ¶ 36, 84 P.3d 1154 ("The corporate form may be disregarded when there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist . . . and the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." (alteration in original) (internal quotation marks omitted)). But this is not one of those instances.

■ ¶ 29 Here, the City is not seeking to pierce Big Ditch's corporate veil. Rather, the City has sought declaratory relief regarding the rights of certain Big Ditch shareholders. Its first claim sought a declaration that the Shareholders do not have the right or authority to file change applications over the water rights subject to the Agreement, either directly with the state engineer or by request made to Big Ditch in accordance with Utah Code section 73–3–3.5. The 1905 Agreement is a contract that Big Ditch, as a corporation, entered with the City. It is indisputable that the Shareholders are not themselves parties to the Agreement. Thus, any rights that Big Ditch shareholders have as a result of the Agreement are necessarily derivative of Big Ditch's rights. It follows that an adjudication of Big Ditch's rights vis-à-vis the Agreement is necessarily binding upon the Shareholders and that they are not entitled to sue or be sued in their individual capacities under the Agreement.

¶ 30 We held in *East Jordan Irrigation Co. v. Morgan* that shareholders of water companies could not independently file change applications. 860 P.2d 310, 316 (Utah 1993). Rather, consent of the corporation's board of directors is required. *Id.* In broad fashion, this holding was subsequently implemented by the Legislature. *See* Utah Code Ann. § 73–3–3.5(2) (Supp.2010) ("A shareholder who seeks to change the point of diversion, place of use, or purpose of use of the shareholder's proportionate share of water in the water company shall submit a request for the change, in writing, to the water company."). Because shareholders' rights are derivative of the corporate entity in which they hold stock, if that entity cannot file a change application, neither can it file on behalf of its shareholders. The City concedes this much, as it has admitted in its brief that "[w]here Big Ditch lacks authority to file change applications, it follows that its shareholders are even further removed from such authority." Because Big Ditch is the only entity arguably empowered to file change applications with respect to the water at issue, the Shareholders were not properly named as defendants.

¶ 31 The City also sought a declaration against the Shareholders that "Big Ditch stock represents the right only to receive and use on lands historically irrigated from the Big Ditch System the irrigation water delivered pursuant to . . . the 1905 [Agreement]." Like its claim regarding the Shareholders' right to file change applications, this claim fails for the simple reason that this issue is a matter between Big Ditch, as a corporation, and its Shareholders, as owners of Big Ditch stock. *See E. Jordan,* 860 P.2d at 314 (stating that a shareholder's rights in, and relationship with, a water company, "are dependent on and limited by the scope of [the water company's] articles of incorporation, which [the shareholder] agreed to by virtue of its purchase of shares").

¶ 32 We conclude that the Shareholders were not properly named as defendants in their individual capacities. The Shareholders are merely individuals who own stock in Big Ditch. They have no privity with, nor duty to, the City. The Shareholders can look only to Big Ditch, the entity tasked with shielding and protecting their interests. Because the City's claims against the Shareholders were legally deficient, the district court should have dismissed them.

## II. THE CITY HOLDS TITLE TO THE EXCHANGE WATER

¶ 33 The district court ruled that the 1905 Agreement conveyed to the City Big Ditch's title to its Big Cottonwood Creek water right. The district court also determined that, rather than a straight exchange of titles, Big Ditch received only a contractual right to receive irrigation water from the City. Big Ditch contends that the Agreement involved a quid pro quo exchange of titles and that Big Ditch holds legal title to the water that the City is required to deliver to Big Ditch's system.[8] We uphold the district court's construction of the Agreement.

¶ 34 Both parties asserted in the district court that the 1905 Agreement is integrated and unambiguous and should be construed as a matter of law. The district court agreed, and neither party has appealed this finding. We therefore interpret the Agreement as a matter of law.

¶ 35 The Agreement states that Big Ditch "grants, bargains and sells" to the City "all of the right of … its portion of the water flowing in Big Cottonwood Creek." In return, the City agreed to "perpetually and continuously deliver to [Big Ditch] from the first day of April until the first day of October" a flow of water "suitable for the purposes of irrigation" in an amount tied to the measured flow of the creek. The Agreement further provides that the City may deliver the water to Big Ditch from any source that the City sees fit.

■ ¶ 36 We conclude that the City holds title to the water on both sides of the exchange. While Big Ditch's promise to the City contains language of conveyance, the City's commitment to deliver water to Big Ditch is devoid of conveyance language. Rather, the City retained the right to designate the sources of the water it delivers to Big Ditch, which is a fundamental attribute

of ownership. Additionally, Big Ditch is not obligated to maintain its water rights; that responsibility rests with the City. We therefore conclude that the City holds title to all of the contract water.

¶ 37 The district court correctly concluded that the 1905 Agreement was not a mere exchange of title. Rather, the Agreement effectuated an exchange of title to Big Ditch's water right for a contractual commitment by the City to deliver water to Big Ditch. Therefore, the 1905 Agreement vested in the City title to all the water rights at issue.[9]

## III. THE 1905 AGREEMENT HAS NOT BEEN MODIFIED AND BIG DITCH IS NOT ESTOPPED FROM ENFORCING ITS FULL RIGHTS UNDER THE AGREEMENT

¶ 38 Early in the litigation, the City sought a declaration that Big Ditch could use its contractual water only for irrigation purposes on the lands owned by its shareholders. The district court rejected this suggestion. While the Agreement provides that the City is obligated to deliver water "suitable for the purposes of irrigation," the district court concluded that this language does not act as a limitation on the nature or place of use of the water. It therefore held that the "City is required to deliver the amounts of water stated in paragraph 2 of the 1905 Agreement to Big Ditch."[10]

¶ 39 Subsequently, the City sought a declaration that Big Ditch could not demand the full amount of water to which it was entitled under the Agreement because it had failed to take the full amount in prior years. The district court agreed. It determined that the scope of the City's contractual obligations under the 1905 Agreement must be judged by the parties' subsequent conduct and assigned significant weight to the fact that the amount of water taken by Big Ditch has

8. Big Ditch also argues that disputes of material fact preclude summary judgment in favor of the City. We disagree. We construe the Agreement as a matter of law and find that any factual disputes are immaterial.

9. Because we conclude that the Agreement vested title to the water rights in the City, we need

not consider Big Ditch's argument that the district court abused its discretion when it denied Big Ditch's motion to reconsider title.

10. These rulings have not been appealed and therefore are not before us.

steadily diminished over the years. According to the district court, this fact, together with the City's reliance on Big Ditch's diminishing use in its planning and expenditures, mandated the legal conclusion that the parties had modified the Agreement. In the alternative, the district court held that Big Ditch was equitably estopped from demanding the full quantity of water to which it is entitled under the Agreement. In so ruling, the district court erred. We hold that Big Ditch, rather than the City, is entitled to summary judgment on these issues.

A. *Equitable Estoppel Does Not Apply Because Big Ditch's Prior Diminishing Use of Its Contract Water Is Not Inconsistent With Its Current Demand for the Full Amount*

¶ 40 The purpose of estoppel is "to rescue from loss a party who has, without fault, been *deluded* into a course of action by the *wrong* or *neglect* of another." *Morgan v. Bd. of State Lands,* 549 P.2d 695, 697 (Utah 1976) (emphases added). Generally, application of equitable estoppel is reserved for instances of wrongdoing by the estopped party. *See, e.g., Tanner v. Provo Reservoir Co.,* 76 Utah 335, 289 P. 151, 154 (1930). Equitable estoppel is a disfavored remedy. *See, e.g., Bruner v. Yellowstone Cnty.,* 272 Mont. 261, 900 P.2d 901, 905 (1995). It should be applied rarely, *see, e.g., Blais v. Allied Exterminating Co.,* 198 W.Va. 674, 482 S.E.2d 659, 662 (1996), and only when necessary to avoid injustice, *see, e.g., Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

¶ 41 To prevail on a claim of equitable estoppel, a party must establish three elements. *Youngblood v. Auto-Owners Ins. Co.,* 2007 UT 28, ¶ 14, 158 P.3d 1088. First, there must be "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted." *Id.* (internal quotation marks omitted). Second, estoppel requires "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act." *Id.* (internal quotation marks omitted). Third, there must be "injury to the second party that would result from

allowing the first party to contradict or repudiate such statement, admission, act, or failure to act." *Id.* (internal quotation marks omitted). The district court failed to evaluate each of these required elements. Instead, it focused exclusively on the reliance element. This was error because the City failed to establish the first element of equitable estoppel—an inconsistent act.

¶ 42 The first element of equitable estoppel requires "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted." *Id.* (internal quotation marks omitted). This element is met only when the party sought to be estopped has intentionally or through culpable negligence induced the other party to change its position by relying on the inconsistent act. *See Almon, Inc. v. Utah Liquor Control Comm'n,* 696 P.2d 1210, 1215 (Utah 1985) (stating that estoppel requires inducement through intentional conduct or culpable negligence); *Morgan,* 549 P.2d at 697; *Kelly v. Richards,* 95 Utah 560, 83 P.2d 731, 734 (1938); *Colman v. Colman,* 743 P.2d 782, 790 (Utah Ct.App.1987); *see also Wall v. Salt Lake City,* 50 Utah 593, 168 P. 766, 772 (1917) (noting that estoppel applies only where conduct is *"of such character as to amount to a fraud"* (internal quotation marks omitted)). *But see Glew v. Ohio Sav. Bank,* 2007 UT 56, ¶ 23, 181 P.3d 791 ("[A]bsence of intent will not immunize a party from a determination that its conduct was inequitable."). Thus, to establish equitable estoppel, the City was required to show that Big Ditch's prior conduct is inconsistent with its current request for the full amount of its contractual water. And Big Ditch's conduct in this regard must have been intentional or, at a minimum, must amount to "culpable negligence."

¶ 43 The City contends that Big Ditch has historically made a conscious decision to take less water than that to which it was entitled. The City argues this course of conduct satisfies the first element of estoppel because Big Ditch's historical conduct is inconsistent with Big Ditch's demand for the full quantity of water to which it is entitled under paragraph 2 of the Agreement.

¶ 44 We find no inconsistency in Big Ditch's conduct. It is true that Big Ditch has diverted a decreasing amount of water into its canal over the years. But even assuming that Big Ditch has reduced its take deliberately, it does not follow that such conduct is inconsistent with Big Ditch's current demand for the full amount of water to which it is contractually entitled.

¶ 45 The Agreement requires the City to deliver each year to Big Ditch a quantity of water proportionate to the total amount of water flowing in Big Cottonwood Creek. The formula is a fixed one. And the Agreement does not contemplate that the City's delivery obligation will vary with Big Ditch's beneficial use of the water. Rather, the Agreement is in the nature of a requirements contract.[11] As a result, Big Ditch may, but is not required to, take as much water as its shareholders desire, up to the maximum allowed under the Agreement. This makes sense given the nature and use of irrigation water. Both the level of stream flow and the demand for irrigation water will vary from year to year. Thus, Big Ditch's decision to take less water in any given year or years is not inconsistent with a later request for the full amount. In short, Big Ditch's historic conduct is not inconsistent with its current position that it remains entitled to the full amount of water should it so elect.

¶ 46 Because the City cannot establish the first element of equitable estoppel as a matter of law, we need not consider the other two elements. Rather, we conclude that the district court erred in holding that Big Ditch was equitably estopped from demanding its full contractual allotment.

## B. The Statute of Frauds Requires That Any Contract Modification to Be in Writing

¶ 47 The district court ruled in the alternative that the parties had modified the 1905 Agreement through their course of conduct and that, as such, Big Ditch was no longer entitled to its full contractual allotment of water. In so holding, the district court nec-

essarily concluded that Big Ditch was estopped from asserting the statute of frauds as a defense to the purported modification. This was error.

¶ 48 Where the statute of frauds requires a contract to be in writing, any modification of the contract must also be in writing. *Allen v. Kingdon,* 723 P.2d 394, 396 (Utah 1986); *Bamberger Co. v. Certified Prods.,* 88 Utah 194, 48 P.2d 489, 491 (1935), *aff'd on rehearing,* 88 Utah 213, 53 P.2d 1153 (1936). Utah courts have recognized a narrow exception to this general rule. It applies only "where a party has changed position by performing an oral modification so that it would be inequitable to permit the other party to found a claim or defense on the original agreement as unmodified." *Allen,* 723 P.2d at 396. In such circumstances, a party is estopped from asserting the statute of frauds as a defense. *See id.*

¶ 49 Here, the parties agree that the 1905 Agreement is subject to the statute of frauds. Thus, absent an applicable exception to the statute of frauds, any modification to the agreement must be in writing. The City argues that Big Ditch should be estopped from relying on the statute of frauds because the parties modified the Agreement and the City relied on the modification. We disagree.

¶ 50 The City has not alleged that the Agreement was orally modified. Rather, the City alleges the Agreement was modified through Big Ditch's course of conduct. Specifically, the City argues that Big Ditch modified the 1905 Agreement by consistently decreasing its take of water and by using the water that it did take solely for irrigation. But we have never recognized a modification by way of unilateral course of conduct; all of the cases speak in terms of an "oral modification." More importantly, Big Ditch's course of conduct is not inconsistent with the 1905 Agreement. As we have already determined, the Agreement expressly allows Big Ditch to take as much water as it may desire in any given year up to the amount to which it is

---

11. Black's Law Dictionary defines "requirements contract" as follows: "A contract in which a buyer promises to buy and a seller to supply all

the goods or services that a buyer needs during a specified period." BLACK'S LAW DICTIONARY 348 (8th ed. 2004).

contractually entitled. And the district court ruled that Big Ditch's use of the water was not limited to irrigation. Because the Agreement contemplates Big Ditch's course of conduct, it is not inequitable for Big Ditch to raise the statute of frauds to defend against the City's modification claim. Because there is no applicable exception to the statute of frauds, the purported modification is unenforceable.

¶ 51 The City's equitable estoppel and modification claims fail as a matter of law. Thus, Big Ditch is entitled to summary judgment on these issues and the Agreement as originally drafted remains in force. The district court held that, as originally drafted, the "integrated and unambiguous" Agreement "require[s] the City to deliver the amounts of water yielded by the formula stated in paragraph 2 of the Agreement," and the Agreement does not limit "the nature or place of use of the water delivered to Big Ditch." The City has not appealed this construction of the original Agreement. Thus, we hold that Big Ditch may take the full amount of "irrigation-quality" water to which it is entitled under paragraph 2 of the Agreement and that its use of that water is not limited to irrigation.

## IV. BECAUSE BIG DITCH IS "ENTITLED TO THE USE OF WATER," IT IS ENTITLED TO FILE CHANGE APPLICATIONS

¶ 52 Section 73–3–3 of the Utah Code provides that "[a]ny person entitled to the use of water may make permanent or temporary changes in the: (i) point of diversion; (ii) place of use; or (iii) purpose of use for which the water was originally appropriated." UTAH CODE ANN. § 73–3–3(2)(a) (Supp. 2010).[12] The district court concluded that Big Ditch was not entitled to file change applications under this section. It reasoned that Big Ditch was not "entitled to the use of water" because it was neither an "appropriator" nor "owner" of a water right. In so holding, the court relied on two cases from this court, *East Jordan Irrigation Co. v. Morgan,* 860 P.2d 310 (Utah 1993) and *Pris-*

*brey v. Bloomington Water Co.,* 2003 UT 56, 82 P.3d 1119. It did not, however, consider more recent precedent. We conclude the district court erred.

¶ 53 In *East Jordan,* we faced the question of whether a shareholder in a mutual water corporation had a legal right to file a change application in its own name without the consent of the corporation. 860 P.2d at 310–11. We held that it did not. *Id.* at 316. First, we reasoned that the shareholder was not an appropriator of the water right. *Id.* at 313. Second, after applying principles of corporate law, we concluded that only the corporation may initiate a change application because it "alone is empowered with the right to manage and control the affairs of the company." *Id.* at 314.

¶ 54 In *Prisbrey,* we considered whether a lessor of water rights was "entitled to the use of" the leased water such that it could file a change application at the lessee's request. 2003 UT 56, ¶¶ 22–23, 82 P.3d 1119. We concluded that it was. *Id.* ¶ 23. We noted that we had previously held that the phrase "person entitled to the use of water" "refers strictly to a party who 'alone owns the right as an appropriator to the use of public waters.'" *Id.* (quoting *E. Jordan,* 860 P.2d at 313). Because "only [the lessor had] made application to the state engineer for use of the water rights in question," it properly filed the change application. *Id.* ¶¶ 23, 25. Our conclusion was bolstered by the fact that allowing a lessee to file a change application would derogate the rights of the lessor because the lessee's interest is only a terminable possessory one. *Id.* ¶ 24.

¶ 55 Although *East Jordan* and *Prisbrey* can be read to have equated the phrase "person entitled to the use of water" with "appropriator" or "owner" status, we retreated from this narrow reading in *Strawberry Water Users Ass'n v. Bureau of Reclamation,* 2006 UT 19, 133 P.3d 410. In *Strawberry,* the United States initially *appropriated* water, then accepted applications from homesteaders to use the water. *Id.* ¶¶ 15–16, 18. A homesteader whose application was

---

12. Because there have been no substantive changes to the relevant statutes that would affect this opinion, we cite to the current versions, unless otherwise indicated.

approved was contractually "entitled" to a certain quantity of water "in perpetuity." *Id.* ¶¶ 16, 18. Later, an association of water users who had succeeded to the homesteaders' rights filed change applications. *Id.* ¶ 21. The United States protested, claiming ownership of the water rights. *Id.* ¶¶ 21, 30. The association countered, claiming equitable title. *Id.* ¶ 27.

¶ 56 We recognized that "[i]n navigating a course through Utah water law, it is easy to be misled by the word 'ownership,'" *id.* ¶ 34, because one can never own water. Rather, one can only own the right to use water. *See id.* ("'All waters in this state, whether above or under the ground, are hereby declared to be *the property of the public, subject to all existing rights to the use* thereof.'" (quoting UTAH CODE ANN. § 73-1-1 (2004))). We therefore concluded that "it is not sufficient to ask only who has title to water or in whose name a certificate of appropriation has been issued." *Id.* ¶ 35. And we repudiated any suggestion in *Prisbrey* that one must be either an "owner" or "appropriator" of water in order to be one "entitled to the use of water" for the purposes of a section 73-3-3 inquiry. *See id.* ¶¶ 39-40. We similarly distinguished *East Jordan*, noting that it "illustrates the importance of asking not only the 'title' or 'ownership' question, but also the second question, which probes roots, purposes, and entitlements." *Id.* ¶ 36.

■■■ ¶ 57 After analyzing all of our cases on the issue—*East Jordan, Prisbrey,* and *Strawberry*—we conclude that owner or appropriator status is not determinative of whether one may file a change application. Rather, one's right to use water is significant. While there are times when one's right to use is subsumed to other competing interests, as in *East Jordan* and *Prisbrey*, it remains the case that one with an entitlement to use water may file a change application. This framework is consistent with the statutorily prescribed practice of the State Engineer, which focuses on "entitle[ment] to the use of water," thereby largely avoiding the "ownership" question. *See* UTAH CODE

ANN. § 73-3-3. This practice acknowledges that "ownership of water is far more complex than ownership of other forms of property, and the mere existence of legal title does not determine all the rights of ownership. Indeed, even the term 'ownership' is an oversimplification." *E. Jordan,* 860 P.2d at 317 (Durham, J., dissenting).

■■■ ¶ 58 We conclude that Big Ditch is entitled to file change applications regarding the water to which it is contractually entitled under the 1905 Agreement. Under the 1905 Agreement, the City is obligated to provide to Big Ditch a measured flow of water in perpetuity. And, unlike in *East Jordan* and *Prisbrey,* Big Ditch's right to use is not subsumed to other competing interests. As a result, Big Ditch is entitled to file change applications with the State Engineer.[13]

## V. THE DISTRICT COURT PROPERLY DISMISSED DEFENDANTS' ANTITRUST COUNTERCLAIMS BECAUSE THE CITY'S ALLEGED ANTICOMPETITIVE ACTIVITIES ARE EXEMPT FROM THE UTAH ANTITRUST ACT

¶ 59 Big Ditch and the Shareholders contend that the district court erred in dismissing their antitrust counterclaims. They each raise several issues, but we need address only one: whether the district court erred in concluding that the City's alleged anticompetitive activities are exempt from the Utah Antitrust Act.

¶ 60 The Utah Antitrust Act defines anticompetitive activities as follows:

(1) Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is declared to be illegal.

(2) It shall be unlawful for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of trade or commerce.

UTAH CODE ANN. § 76-10-914 (2008).

¶ 61 Section 76-10-915 exempts from this definition "the activities of a municipality to

---

**13.** We hold only that Big Ditch may file change applications with the State Engineer. We express no opinion as to whether the applications should be approved.

the extent authorized or directed by state law." *Id.* § 76–10–915(1)(f).[14] When construing the provisions of the Utah Antitrust Act, we look to "interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes." *Id.* § 76–10–926.

¶ 62 We construed the municipal status exemption of section 76–10–915 in *Summit Water Distribution Company v. Summit County*, 2005 UT 73, 123 P.3d 437. After surveying relevant federal precedent, we identified "the range of state authorization that suffices to immunize anticompetitive municipal actions from antitrust laws." *Id.* At one end of the spectrum, we noted that a "municipality need not show 'a specific, detailed legislative authorization' to engage in the particular anticompetitive conduct at issue" in order for the exemption to apply. *Id.* ¶ 39 (quoting *City of Lafayette, La. v. La. Power & Light Co.*, 435 U.S. 389, 415, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978)). On the other end of the spectrum, we noted that the exemption will not apply where "[a] state . . . allows its municipalities to do as they please," because in such circumstances the state "can hardly be said to have contemplated the specific anticompetitive actions for which municipal liability is sought." *Id.* (internal quotation marks omitted). Out of this "range" of conduct, we concluded that the exemption applies when the alleged anticompetitive conduct is a " 'foreseeable result' " of the authority granted the municipality under state law. *Id.* ¶ 40.

¶ 63 Here, it is undisputed that the City is a municipality. Thus, the question is whether the City's alleged monopoly over the Big Cottonwood Creek water market and other related anticompetitive activities are the "foreseeable result" of the authority granted the City under state law. The Legislature has expressly granted Utah municipalities authority to acquire, purchase or condemn "any water, waterworks system, water sup-

ply or property connected therewith." Utah Code Ann. § 10–7–4(1) (Supp.2010). In addition, municipalities may purchase corporate stock of irrigation companies and are authorized to "take the necessary steps to bring the land owned or controlled by" an irrigation company "within any conservation or conservancy district formed" by the municipality. *Id.* § 73–1–19 (1989). A municipality may not sell water rights, Utah Const. art. XI, § 6, but it may market surplus water to persons or entities located outside of its boundaries. Utah Code Ann. § 10–8–14(1)(d) (2007); *see also Cnty. Water Sys., Inc. v. Salt Lake City,* 3 Utah 2d 46, 278 P.2d 285, 290–91 (1954).

¶ 64 This statutory framework evinces a state policy of displacing competition with regulation in the area of municipal control over water and water rights. The Legislature has contemplated municipalities having broad authority to invest in and manage their water systems so as to ensure their ability to furnish current and future residents with sufficient water. And the Legislature has not limited how much water a municipality may acquire, nor has it placed any geographical limitations upon the area in which the municipality may operate its water system. Against this backdrop, we have little trouble concluding that the City's alleged monopoly over the Big Cottonwood Creek water market and other alleged related anticompetitive activities are a foreseeable result of the authority granted the City by the state. We therefore conclude that the district court properly dismissed the antitrust counterclaims.

¶ 65 The district court properly applied the municipal status statutory defense to dismiss the antitrust counterclaims. This holding moots Big Ditch and the Shareholders' remaining arguments regarding the dismissal of the antitrust claims.[15] We therefore need not, and do not, reach these arguments.

---

14. The Legislature has since amended this provision. The amended provision exempts from the antitrust act "the activities of a political subdivision to the extent authorized or directed by state law, consistent with the state action doctrine of federal antitrust law." Utah Code Ann. § 76–10–915(1)(f) (Supp.2010).

15. The Shareholders argue that before the court issued its ruling on the City's motion to dismiss, they had voluntarily dismissed their antitrust counterclaim by removing it from the amended counterclaim and that the district court could not dismiss a claim that was no longer being

## CONCLUSION

¶ 66 The Shareholders were entitled to dismissal of the City's claims against them under the corporate shield doctrine because the claims were brought against the Shareholders in their capacity as Big Ditch stockholders. The City holds title to the water on both sides of the exchange because the 1905 Agreement vests only the City with fundamental attributes of water rights ownership. Because the Agreement requires the City to perpetually deliver to Big Ditch a quantity of water, Big Ditch qualifies as a "person entitled to the use of water." As a result, Big Ditch may seek to change attributes of its entitlement by filing change applications with the State Engineer. Neither equitable estoppel nor modification bars Big Ditch from demanding its full contractual allotment of water. Finally, the municipal status statutory defense exempts the City's participation in the Big Cottonwood Creek water market from the Utah Antitrust Act.

¶ 67 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Justice LEE concur in Justice PARRISH's opinion.

asserted. In the alternative, the Shareholders argue that the original counterclaim was sufficiently meritorious to survive dismissal. Like the Shareholders, Big Ditch argues that the district court improperly considered the original counterclaim rather than the amended counterclaim. In addition, Big Ditch argues that its amended counterclaim stated a claim on which relief could be granted. Finally, Big Ditch argues that the district court abused its discretion when it denied Big Ditch's motion to file a second amended antitrust counterclaim some four months after the antitrust claim was dismissed. We need not reach these arguments because we hold that the City's actions vis-à-vis the Big Cottonwood Creek water market are exempt from the Utah Antitrust Act.